Snyder *et al. v.* Jetton *et al.*

No. 14,898.

SNYDER ET AL. *v.* JETTON ET AL.

REAL ESTATE.—*Fraudulent Conveyance.—Consideration.—Good Faith of Parties.*—Where a father conveys land to a son for a stipulated consideration, to be paid when requested, and subsequently loans money to him to build a house thereon, and later, upon the son's arrest for homicide, the land is reconveyed to the father in consideration of the unpaid purchase money, of the loaned money and of his payment of other debts of the son and the payment of the expenses of defending the latter upon his trial, the whole exceeding the value of the land, a finding that the conveyance is not fraudulent as against a judgment obtained by the administrator of the decedent in a subsequent action for damages for the unlawful killing, will be upheld where there is evidence tending to show that the transaction was had in good faith and without thought on the father's part of the son's liability for damages. See opinion.

From the St. Joseph Circuit Court.

*H. C. Dodge,* for appellants.

*A. Anderson* and *L. Hubbard,* for appellees.

DAILEY, J.—This was a suit brought by appellants, Anna Snyder, George Snyder, and Lillie S. Keefer, against the appellees, William L. Jetton, Thomas J. Jetton, and Lydia A. Jetton, in the St. Joseph Circuit Court on the 27th day of December, 1887, to set aside the conveyance of real estate described in the complaint, made by the appellees, Thomas J. and Lydia A. Jetton, to their co-appellee, William L. Jetton, who is the father of said Thomas.

The complaint, which is in one paragraph, shows that the appellants are the owners of an unpaid judgment against the appellee, Thomas J. Jetton, and alleges that the conveyance was made with the intention, participated in by all the appellees, of cheating, hindering and delaying the creditors of said Thomas.

The averments of the complaint are full and direct to the point, that at the time of the conveyance complained of, Thomas J. Jetton was wholly insolvent, and had no other property subject to execution; also that his insolvency continued until the filing of the complaint. The facts of the case are briefly as follows:

On the 14th day of October, 1885, Thomas J. Jetton unlawfully killed William Snyder, the husband of Anna Snyder, and the father of the other two appellants. At the time of the homicide, appellee Thomas J. Jetton held the legal title to the land described in the complaint. On the 17th day of November following, Thomas J. Jetton and his wife joined in the conveyance of the real estate to his father, William L. Jetton. On the 19th day of October, 1886, appellant, Anna Snyder, as administratrix of the estate of William Snyder, deceased, recovered a judgment against Thomas J. Jetton, in the St. Joseph Circuit Court, in the sum of five thousand dollars damages for the unlawful killing of said William Snyder. Execution was issued upon said judgment; and no property found. Subsequent to the recovery of said judgment, and prior to the filing of the complaint herein, said administratrix made her final report to the St. Joseph Circuit Court and was discharged; and said judgment is in full force and unappealed from.

The case was put at issue by an answer in general denial. On the 23d day of March, 1888, the cause was submitted to the court for trial without the intervention of a jury, and the evidence was heard. On the 14th day of January, 1889, the court rendered special findings of fact and stated its conclusion of law thereon as follows: "That on the 22d day of October, 1879, William L. Jetton, being owner of the following described land, to wit: The north half ( ½ ) of the southeast quarter ( ¼ ), and the southwest quarter of the northeast quarter, and the

southeast quarter of the southwest quarter of section twenty-three, in township thirty-eight north, of range three east, consisting of 160 acres of land situated in St. Joseph county, in the State of Indiana, executed and delivered to Thomas J. Jetton, a deed of conveyance, in which the wife of said William L. Jetton joined as a grantor conveying said land to said Thomas J. Jetton in consideration of the sum of $8,000; that the said Thomas J. Jetton was a son of the said William L. Jetton and wife, and the said William L. Jetton then had one other child, a daughter, who is still living; that at the time of the making of said deed the said Thomas J. Jetton did execute and deliver to said William L. Jetton and wife a life lease, conveying to said William L. Jetton and Sarah J., his wife, who is still living, all of said land to be held by them during the life of said William L. Jetton and Sarah J. Jetton, and during the life of the survivor of them, and that it was further agreed that the said Thomas J. Jetton should pay all the taxes on said land and keep the buildings thereon insured, and pay to the said William L. Jetton and wife, and to the survivor of either of them, during the life of said survivor, the sum of $300 a year; it being further provided in said lease that if the said William L. Jetton and wife should at any time take possession of said land under and by virtue of said life lease, then said annual payment of $300 should cease; that it was further agreed between said William L. Jetton and the said Thomas J. Jetton that whenever requested thereto by the said William L. Jetton the said Thomas J. Jetton should pay to said William L. Jetton, the said sum of $8,000. And it was further agreed that in the event that said William L. Jetton should not demand payment of said sum of money, and should die, and the sister of said Thomas J. Jetton should be living, then the said Thomas J. Jetton

should pay to said sister so much money as would give to her one-half of the total estate of said William L. Jetton; that on the 14th day of October, 1885, Thomas J. Jetton unlawfully killed William Snyder, and that the said William Snyder, then dying, left surviving him the following heirs, to wit: Anna Snyder, his widow, and two children named respectively George S. Snyder and Lillie S. Snyder; that said Anna Snyder was afterwards appointed administratrix of the estate of said William Snyder, and afterwards commenced an action in the St. Joseph Circuit Court against the said Thomas J. Jetton, claiming that, as said administratrix, she was entitled to recover damages of him by reason of the unlawful killing of said William Snyder, and on the 19th day of October, 1886, by the judgment of said court, she recovered of the said Thomas J. Jetton the sum of $5,000, together with her costs, assessed at the sum of $36.45, none of which has been paid; that on the 17th day of November, 1885, the said Thomas J. Jetton was indebted to his father, William L. Jetton, in the sum of $8,000, and in the further sum of $2,000, being moneys loaned by said William L. Jetton to the said Thomas J. Jetton, with interest thereon amounting to the sum of over $50, and in the further sum of over $600 for rent of said land, together with interest amounting to the sum of over $50, and that he was in debt to divers parties in various sums of money, a list of which indebtedness he then had; that the said Thomas J. Jetton then proposed to his father, William L. Jetton, that if he, the said William L. Jetton, would cancel said indebtedness, and would pay certain debts which he then owed, a list of which said parties then had before them, and would further pay the costs and expenses of defending a criminal suit then pending against the said Thomas J. Jetton in the St. Joseph Circuit Court, in which the said Thomas J. Jetton

was charged with the crime of murder, he, the said Thomas J. Jetton, would reconvey all of said land to the said William L. Jetton, and that Lydia Jetton, who was the wife of said Thomas J. Jetton, would join in the execution of said deed, and that the object of the said Thomas J. Jetton was to insure the payment to his father of the debts which were then due him, and to insure to him a good defense of said criminal prosecution, and at the same time it was agreed and understood that in the event of the proposition being accepted, the said William L. Jetton should have the personal property of said Thomas J. Jetton; that said William L. Jetton did accept said proposition, and in pursuance thereof the said Thomas and Lydia did then, on said 17th day of November, 1885, execute and deliver to the said William L. Jetton a deed of conveyance, conveying to him all of said land, and also sold and delivered to William L. Jetton personal property amounting in value to $800; that said William L. Jetton accepted the same in payment of said indebtedness and in defraying the said other debts of Thomas J. Jetton due to other persons, and in paying up and defraying costs and expenses of said criminal prosecution, and he did pay out the further sum of $1,357; that at the date of said conveyance the value of said land, providing the title had been clear, would have been $9,600, but taking into consideration the fact that the title was encumbered by said life lease, and by reason of the further fact that the wife of said Thomas J. Jetton had an inchoate interest in said land, it had no market value, and could not have been sold for over $4,000; that at the time of the execution and delivery of the deed the said William L. Jetton knew of the killing of William Snyder by Thomas J. Jetton, but believed the said Thomas J. Jetton was not guilty of any criminal or unlawful act in said killing, and was innocent of having

done any wrong in killing said William Snyder, but believed he acted in self-defense, and did not believe that the said Thomas J. Jetton was in any way indebted to the estate of said William Snyder, or was in any way civilly liable for any wrong done to William Snyder, nor did he know or believe that the said Thomas J. Jetton made said conveyance for the purpose of cheating, hindering, defrauding or delaying any of his creditors. And, as a conclusion of law from the foregoing facts, I find that the plaintiff is not entitled to recover in this action."

To this conclusion of law, the appellants, at the time, excepted.

On the same day, appellants filed their motion for a new trial, which was overruled, to which ruling of the court appellants, at the time, excepted.

On the 15th day of January, 1889, the court rendered final judgment upon the conclusion of law stated.

The errors assigned in this court are two in number:

First. The court erred in stating its conclusion of law.

Second. The court erred in overruling the motion for a new trial.

The appellants, in the court below, after introducing formal proof of the ownership of the land by Thomas J. Jetton, the killing of William Snyder by him, the relationship of the plaintiffs, the value of the land, and the insolvency of Thomas J. Jetton at the time of the conveyance, and at the time of filing the complaint in this cause—about all of which facts there was no controversy —rely wholly upon the testimony of William L. Jetton, one of the appellees, and grantee in the deed, taken on examination of the parties under sections 518 and 519, Burns' Rev. 1894.

The learned counsel for the appellants, in his very

Snyder *et al. v.* Jetton *et al.*

able and exhaustive brief, insists that there is no conflict in the evidence, and no testimony in the record tending to support the decision of the trial court, which fact takes the case out of the rule that this court will not weigh the evidence.

He contends that the facts established are substantially as follows: In 1879, William L. Jetton advanced to his son the land in dispute, retaining a lease which provided for the payment to the father, by the son, of $300 a year during the life of himself and wife, or the survivor, with a provision in the contract that in case he defaulted any payment, the father might take possession of the land and have the actual use of it until the death of himself and wife, or the survivor, but there was no such agreement or arrangement between the parties as would constitute the relation of vendor and vendee. There was a verbal agreement and understanding that if, at the death of the father, he did not leave property enough to equal the land at $8,000 valuation, the son was to pay enough to the sister to make an equal distribution of the father's estate, taking into consideration the advancement to the son at $8,000; that in 1885 the appellants became creditors of the son, at which time he made a voluntary conveyance of all the land, and turned over to his father personal property to the value of $800, which constituted the entire property of all kinds of which Thomas J. Jetton was the owner; that the father at various times paid out for the son sums aggregating in amount $923.49, less the proceeds of the personal property which he received from him; that the entire transaction took place by reason of the anxiety of both the father and son that the farm should not be subjected to sale for the payment of the demand which the appellants held against the latter; that the conveyance of this property was at the special instance and request of the debtor for the purpose

and with the intent of placing the title of the property beyond the reach of legal process upon the liability he had incurred by reason of the unlawful killing of William Snyder, and to create a fund upon which he might draw for his future benefit and protection, all of which must have been known as his intention, by the father, when he accepted the conveyance, and that there was no consideration for the transfer of the title to the real estate to William L. Jetton.

It is also contended to have been the idea on which the parties acted, that inasmuch as the son had never paid the father any consideration for the land, he might deed it back to him, in the emergency in which he found himself, because of the prior gift, and we are reminded of the rule that such circumstances will not constitute a consideration to sustain the conveyance as against creditors.

"A gratuity can not be subsequently converted into a debt so as to become the consideration of a conveyance made by the grantor to the injury of his creditors." Wait's Fraud. Conv., 209, citing "*Clay* v. *McCally*," 4 Woods, 605; *Susong* v. *Williams*, 1 Heiskell (Tenn.), 631.

Counsel sets out in his brief an abstract of much of the testimony of the father, from which he draws his conclusions.

It is not essential to this opinion that we should embody in it an epitome of the evidence on which appellants rely for a reversal of the case. It is enough to say that there is testimony in the record from which an inference of fraud could have been drawn by the trial court, that would not be disturbed by us, but it does not follow from an examination of the whole evidence that the judgment rendered should be reversed.

It appears from an examination of all his evidence,

that William L. Jetton was a man of no great literary ability or legal acumen, and probably did not comprehend the force and effect of all the questions put to him by skilled counsel, and by reason of an inability to grasp the questions, some of the answers apparently conflict with others, but taken as a whole the evidence fairly establishes that the son was in debt to him. This fact is supported by the evidence of the son, and by the evidence of John Dixon, in addition to the testimony of William L. Jetton himself.

The following testimony tends to sustain the judgment:

In answer to interrogatory 20 William L. Jetton states that he had $8,000 which his son owed him, and then he let him have $2,000 to build a house.

In answer to interrogatory 21, replying to the question as to how the claim of $8,000 originated, and what kind of a claim it was, he said: "The same as any other kind of a claim."

In answer to interrogatory 22 he says he did not know as there was much of anything in the way of evidence to show for it, that it was agreed it should fall back to him whenever the son failed to pay for it. There was a life lease.

We also quote the following questions and answers:

Int. 36. Is it not a fact that you deeded this land to him as an advancement, which, after your death, was to be applied to his interest in your estate? Ans. No, sir; not at all.

Int. 39. This land, the value of it $8,000, was to be considered in the accounting, when they equalized your estate. What do you mean by saying you have a claim of $8,000 against this land? Ans. That was what the land was valued at.

Int. 40. What do you mean by saying you hold a

claim of $8,000 against this land? Ans. That was the price he was to pay for it at the time.

In answer to interrogatory 44 he says that in a conversation had about the conveyance of the land his son Thomas said: "We owe you for the place. You let us have some money to build a house, etc." This conversation was had after Thomas was in jail, but before the suit for damages was instituted.

Int. 50. At the time you took the deed from Thomas Jetton you had been advised, had you not, that Mrs. Snyder had a good cause of action against Thomas Jetton as damage for the killing? Ans. No, sir; I never thought of such a thing. It never came into my mind, and he didn't think it, either.

In answer to interrogatory 68 he states that Thomas said: "We had better deed the place back to father." "We don't pay anything on it, and we haven't paid what we agreed to pay yearly, and you gave us the money to put up a house, and we propose to deed the place back to you and make you safe."

Int. 69. Did you mean the expenses you were about to incur in aiding him in his defense? Ans. I included that in what he owed me.

Int. 70. You say he owed you how much? Ans. He owed me over $11,000.

Int. 72. I asked what he owed you at the time the deed was made? Ans. He owed me, outside of the farm, well nigh $4,000, including these debts.

Int. 92. Don't you know that you simply took the deed from Thomas Jetton for the purpose of aiding him in preventing Mrs. Snyder from collecting any damages? Ans. No, sir; it was the last of my thoughts. I never thought of a suit for damages going to be commenced at all when he gave me the deed.

Int. 94. At the time you took this deed, if I under-

stand you correctly, other than what Thomas Jetton owed you, you do not know the amount of his indebtedness? Ans. Yes, sir; I did know the amount of his indebtedness.

Int. 132. Didn't you know, as a matter of fact, that at the time Thomas Jetton took the deed of the land from you, he never promised to pay you a dollar for it, excepting $300 a year? Ans. I don't know any such a thing. If he did not pay me he had to pay the rent.

Int. 139. Do you remember what consideration was mentioned in the deed? What you paid to Thomas? Ans. Eight thousand dollars.

Int. 140. Do you remember, whether, in that deed, you acknowledged the receipt of that? Ans. I signed the deed, if that is what you call it. I recollect signing the deed.

Int. 141. Do you recollect that in signing it you signed an acknowledgment that you received the $8,000? Ans. No, sir; I don't know I acknowledged I received that.

Int. 142. You say, as a fact, that you did not receive anything? Ans. No, sir; not a dollar of it.

Int. 144. State whether, at the time you took the deed from Thomas J. Jetton, you believed him guilty of any crime whatever, or whether you thought he killed William Snyder in self-defense and was innocent of having done a criminal act? What was your belief at the time you took the deed? Ans. I did not think he was guilty of any criminal act. I think he done it in self-defense; that was my opinion. I was not there. From the circumstances that happened before, I think Thomas had no idea of anything else. He would not have bothered or touched him if he had stayed away.

Int. 145. Was that your belief? Ans. It was. From threats he has made to Thomas, and at other times,

Thomas was sure that Bill came that morning to kill him one way or the other.

The testimony of John Dixon contains the following:

Int. 1. You drew the deed which has been introduced here in evidence, by which William Jetton conveyed the land to Thomas Jetton? Ans. Yes, sir; I did.

Int. 2. And also this lease? Ans. Yes, sir.

Int. 5. Please state as to what was the consideration. Ans. Thomas Jetton agreed to pay him $8,000.

Int. 6. How was it to be paid? What was said? State what occurred? State the facts? Ans. They called on me to make the deed, and I asked what was the consideration, and they said $8,000.

Int. 7. How was it to be paid? Ans. That was to be paid when the father wanted it. If he wanted to draw it out, he could take it.

Int. 8. Was there any note taken? Ans. No, sir; no note taken.

The testimony of Thomas J. Jetton was substantially as follows:

Int. 1. When you bought this land, what agreement was made between you and your father? What was the actual price? Ans. $8,000.

Int. 3. What agreement was made as to whether it should be paid? Ans. There was no certain time as to when it should be paid.

Int. 4. Under what consideration, if any, was it to be paid? Ans. If he needed it or wanted it, he was to call on me and I was to pay him what I owed him.

He also testifies that at the time he deeded the land to his father he was not aware that Mrs. Snyder had a claim of any kind against him for damages.

From the foregoing quotations of evidence, it appears that the land was sold by William L. Jetton to his son for the sum of $8,000; and that the son was to pay the

Snyder *et al. v.* Jetton *et al.*

$8,000 whenever requested thereto by his father; that the conveyance was not an advancement; that in addition to the $8,000, the son owed the father $2,000, with interest, for money loaned to build a house; that there was also back rent and other debts, making, in all, about $11,000, all of which was due from the son to the father, and constituted a debt, which the son had a right to pay off and discharge, if genuine, by transferring the land to his father to the exclusion of his other creditors.

It further appears that William L. Jetton took the deed in good faith, without any knowledge or suspicion that the administrator of William Snyder had, or could have, any claim against the son, and without any knowledge of any debts due from the son, except those he agreed to pay.

The court below heard all of this testimony, and was of the opinion that the deed was made in good faith and was not in any respect fraudulent.

We can not, under the well settled rules of this court, overthrow the conclusion reached.   It is true Thomas J. Jetton should pay the judgment rendered against him, but if we were sitting as a trial court, with the evidence in this cause before us, we would hesitate to enter a decree depriving William L. Jetton of this property.   He and his wife are about seventy years of age, and the farm in litigation, from the evidence, represents the most of the accumulations of an industrious life.   To deprive him of it on this testimony would be inequitable and a severe punishment for the tort of the son.

We find no error in the record.

The judgment is affirmed.

HOWARD, C. J., took no part in this opinion.

Filed April 17, 1894.