The Rockland Company *et al. v.* Summerville *et al.*

Filed Dec. 14, 1894.

----◆----

No. 17,051.

ROCKLAND COMPANY ET AL. *v.* SUMMERVILLE ET AL.

FRAUDULENT CONVEYANCE.—*Preference of Creditors.—Sons Preferring Father.*—Where there is a *bona fide* preference of creditors by a failing firm, the fact that the creditor preferred was the father of the debtors does not of itself render payment to him fraudulent.

SAME.—*Burden of Proof.*—The fact that the grantee was the father of the debtors does not shift the burden of proof from those alleging fraud, and require the grantors and grantee to show the good faith of the transaction.

| 139 | 695 |
| 154 | 89 |
| 155 | 374 |

| 139 | 695 |
| 159 | 619 |

| 139 | 695 |
| 160 | 697 |

From the Montgomery Circuit Court.

*J. L. Shrum, J. W. Paul* and *M. W. Bruner,* for appellants.

*J. West,* for appellees.

HOWARD, J.—This was an action brought by appellants as judgment creditors against appellees, to set aside as fraudulent a sale of personal property and to subject the same or its proceeds to the payment of the judgments.

There was a finding of facts by the court, with conclusions of law and judgment in favor of the appellees.

The conclusions of law and the overruling of the motion for a new trial are assigned as errors.

The facts as found by the court are:

1. That in November, 1887, one Alex. F. Ramsey was the owner of a stock of boots and shoes, from which he was selling at retail in a storeroom in the city of Crawfordsville. The storeroom was then, and still is, owned by the appellee Peter C. Summerville.

2. That in November, 1887, Ramsey sold his stock of boots and shoes to the appellees, William A. and Walter K. Summerville, at the estimated price, in the way of trade, of $3,500; that in pay therefor he received a deed for a certain lot and building thereon in said city at the estimated value of $3,500, which lot and building so conveyed was the property of Peter C. Summerville and was so deeded in payment for said goods by virtue of an arrangement between him and his sons, William and Walter K.; that afterwards William and Walter K. Summerville executed their promissory notes for $2,000 with interest to Peter C. Summerville, their father, which interest they paid regularly to him each month, together with rent of storeroom up to August, 1890.

3. That soon after the purchase of said stock of boots and shoes by the Summervilles, one Maurice Kelly became a member of the firm and they did business under

the firm name of Summerville & Kelly; that previously, in the year 1882 and not thereafter, Peter C. Summerville and one Kelly had done business in boots and shoes in the city of Crawfordsville under the firm name of Summerville & Kelly; that when Maurice Kelly became a member of the firm with Summerville Bros. in 1887 he paid in cash into said firm the sum of $1,000, which money he had borrowed from his mother, Mary Kelly, who was also the mother-in-law of Peter C. Summerville.

4. That in 1889 Maurice Kelly sold his one-third interest in the firm to the Summerville Bros., they agreeing to pay the firm debts and also to pay to Mary Kelly her $1,000. The business was continued under the style of Summerville & Bro., and the firm paid the debt due Mary Kelly by executing to her their promissory note for $1,000, on which note Peter C. Summerville was surety. At the time of the dissolution of the firm of Summerville & Kelly they owed the Citizens' National Bank of Crawfordsville $1,000, which sum at the time it was borrowed Peter C. Summerville agreed to stand good for.

5. That Summerville & Bro. continued in the business at the same stand, and to all appearance seemed reasonably prosperous until, July 4, 1890, when Walter K. went to his father and said he would not longer continue in the firm, that he and his brother had fallen out, that William was dissipated and the business was going from bad to worse, and told his father to take the store and save himself for what money he had loaned the firm and what he had made himself liable for, and then gave his father the key to the store and did not return there any more to do business; that at the time William and Walter K. Summerville went into business, in 1887, they were each married and were householders, and neither had any property subject to execution, except

their interest in the store, and so continued until the firm of Summerville & Bro. ceased to do business, and are still so insolvent, and that Peter C. Summerville has all the time been solvent, and has good business reputation.

6. That on July 10, 1890, Peter C. Summerville negotiated with William who still continued in charge of the store, for the whole stock of goods with accounts due the firm, for which he agreed to cancel and pay the $2,-000 note made to him by the firm, which was the original investment, and to pay the $1,000 note due to Mary Kelly, on which he was security, and also the note or notes due the Citizens' Bank for $1,000, less any amount which might have been paid on the principal; that William, on the part of the firm, accepted the proposition, and, on July 11, 1890, a bill of sale for the stock of goods with accounts due the firm, was executed by Summerville & Bro. and delivered, with the key to the store, to Peter C. Summerville, who then took charge of the same and closed the store and openly claimed to be the owner of the same and offered to sell the stock and made efforts to find a purchaser therefor.

7. That Peter C. Summerville paid and canceled all the notes and debts assumed by him in the transfer to him of said stock of goods, amounting to nearly $4,000.

8. That the appellants are each *bona fide* creditors of the firm of Summerville & Bro., and have recovered judgments for the several amounts of their claims, and no part of said judgments is paid or replevied.

9. That the store room remained closed, and in the open and notorious possession of Peter C. Summerville, claiming to be the owner and offering to sell said stock of goods, from July 11 to August 28, 1890, at which time he contracted to sell the same to the appellee James Kelly (not of kin to any of the appellees) for the agreed price of

60 per cent. of the invoice to be made of the original cost price. That the invoice amounted to $8,052. The original invoice so made appears to have been lost, not having been produced on the trial. That after the invoice and the stock were gone through, the appellee Kelly became dissatisfied and refused to make his notes for over $3,600. That it was then agreed that Kelly should give his notes for $3,600, in sums of $500 each, except the last, which was for $600 with interest, the first $1,000 due in six months and each of the other notes six months, and as for the remainder of the 60 per cent of the invoice they were to wait and see what success Kelly would have in selling the goods. Afterwards, on July 1, 1892, Kelly executed his note for the further sum of $1,500. That $1,500 of the principal of said purchase-price has been paid and no more. The balance is unsecured, except by Kelly's individual notes, and is in payments yet extending over two years. Kelly is a householder and has property outside estimated to be worth $3,500.

As conclusions of law on these facts the court found for the appellees and that the appellants were not entitled to the relief prayed for in their complaint.

There was no finding of fraud by the court, nor were any facts found from which fraud can be inferred.

The statute, section 6645, R. S. 1894 (section 4920, R. S. 1881), provides that all sales of real estate or personal property made or suffered with intent to hinder, delay or defraud creditors shall be void as to the persons sought to be defrauded.

By section 6649, R. S. 1894 (section 4924, R. S. 1881), it is declared that such fraudulent intent shall be deemed a question of fact.

Under these statutes it has been held that one alleging fraud must prove it; that fraud will never be presumed.

*Stewart* v. *English*, 6 Ind. 176; *Morgan* v. *Olvey*, 53 Ind. 6; *Phelps* v. *Smith*, 116 Ind. 387; *Citizens' Bank* v. *Bolen*, 121 Ind. 301; *Fulp* v. *Beaver*, 136 Ind. 319.

That a debtor can not pay all his creditors and that he pays some creditors rather than others, is not necessarily fraudulent, even if the creditors paid should be relatives or friends of the debtor. *Dice* v. *Irvin*, 110 Ind. 561; *Thomas* v. *Johnson*, 137 Ind. 244; Bump Fraud. Conv. (3d ed.), 183.

It would seem clear, therefore, that the court did not err in its conclusions of law on the facts found.

But it is said by counsel that it was not necessary that the court should have found that the sales were fraudulent in order to find conclusions of law in favor of the appellant; that the relations of the appellees in the transactions were of a confidential nature, and therefore it was incumbent upon appellees to show that their acts were not fraudulent; that, therefore, the court not having found that the sales were free from fraud that amounts to a finding in favor of appellants on the issue of fraud, the burden of proof being upon appellees.

If the Summerville brothers were trying to recover the goods from their father, and should claim that he drove a hard bargain with them by reason of his parental influence over them, we might see some pertinency in this argument of counsel. It does not appear that the father exerted any such influence over his sons in purchasing their stock of goods; but even if he did we do not see how appellants, as third parties, could complain. The parties to the transaction are not complaining. The appellants charged fraud against all the appellees, and we think the burden was upon appellants to show such fraud before they could recover. The court, however, has found no fraud, and we must presume that none was shown.

Counsel for appellants have devoted one long brief and

the greater part of another to an examination of the evidence with the purpose of showing that it does not sustain the findings on the question of fraud. We have gone over this discussion carefully with counsel, and have in every item of evidence adduced found some support for the court's finding. Even more; had the court expressly found that there was fraud in the sales we think it would be very difficult to pick out any evidence to sustain such finding. There was a preference of creditors by a failing firm; the debts preferred were *bona fide;* there was no concealment of any transaction. This does not show fraud. The fact that the chief creditor was the father of the debtors does not of itself render payment to him fraudulent.

We might say, besides, that appellants do not seem to have shown diligence in bringing their action to set aside the sales. The firm failed in July, 1890, and appellants' judgments were all taken from July 14 to December 26, in the same year, yet this action to set aside a sale made July 11, 1890, was not brought until May 24, 1892. It is true that the action is within the statutory period, but the open and public character of appellee's sales, both that to Peter C. Summerville, July 11, 1890, and that to James S. Kelly, August 28, 1890, would seem calculated to challenge an earlier examination into the question of fraud, if there were any.

It is a hardship if honest debts are not paid, but if there is no fraud, but simply inability to pay them, the law can afford no remedy.

The judgment is affirmed.

Filed Dec. 20, 1894.