NAPPANEE CANNING COMPANY ET AL. v. REID, MURDOCH & CO. ET AL.

[No. 19,779. Filed October 8, 1902. Rehearing denied January 7, 1903.]

CORPORATIONS.—*Directors as Creditors.*—*Preference.*—An insolvent manufacturing corporation does not hold its property in trust for its creditors, or subject to any lien, legal or equitable, in their favor, in any other manner than such property is held by an insolvent individual debtor; and such corporation may prefer creditors for whose claims certain directors were surety, or legally bound, although the votes of such directors were necessary to authorize the execution of the instrument creating the preference. Hadley, J., dissents.

From Elkhart Circuit Court; *H. D. Wilson*, Judge,

Action by Reid, Murdoch & Co. and others against the Nappanee Canning Company and others for damages for breach of an alleged contract, and to set aside, as fraudulent, a mortgage or deed of trust. From a judgment for plaintiffs, defendants appeal. Transferred from Appellate Court, under subdivision two of §1337j Burns 1901. *Affirmed in part and reversed in part.*

*J. M. Vanfleet* and *V. W. Vanfleet*, for appellants.
*C. W. Miller, J. S. Drake, S. C. Hubbell* and *H. G. Colson*, for appellees.

Dowling, C. J.—Action by the appellee Reid, Murdoch & Co. against the appellants, to recover from the Nappanee Canning Company damages for the breach of an alleged contract of said company to deliver to the said Reid, Murdoch & Co. 2,000 cases of tomatoes, and also to set aside, as fraudulent, a mortgage or deed of trust executed by the said Nappanee Canning Company to one Samuel Mosiman to secure the payment of divers debts owing by the said Nappanee Canning Company to its directors and to other persons and corporations, for all of which its directors were liable. A demurrer to the complaint was overruled. The appellants answered in denial, and filed a plea of *non est factum* as to the contract in writing set out in the complaint. The record does not show any submission or trial of the cause, but a special finding of facts, with conclusions of law thereon, is set out, to each of which conclusions the appellants separately excepted. Motions for a *venire de novo* and for a new trial were overruled, and judgment was rendered against the Nappanee Canning Company for $1,100, and against all the appellants, vacating and setting aside the mortgage or deed of trust as to each director of the company, and sustaining it as to the other creditors, whose debts were secured by it.

Various errors are assigned, but it will be necessary to consider only the second, which questions the correctness of each conclusion of law, and the fourth, which challenges the ruling of the court on the motion for a new trial.

The facts found by the court which are material to the determination of the cause on this appeal are substantially as follows: On the 7th day of April, 1897, the Nappanee Canning Company was a manufacturing corporation organized under the laws of the State of Indiana, having its principal office at the town of Nappanee, in this State; and the appellee Reid, Murdoch & Co. was a corporation organized under the laws of Illinois, and doing business in Chicago. On said day the appellant the Nappanee Canning

Company sold and agreed to deliver to the appellee Reid, Murdoch & Co. 2,000 cases of tomatoes, such delivery to take place in lots of 1,000 cases, not later than September 15th and October 1, 1897, to be paid for in cash at sixty days, at the rate of sixty-two and one-half cents per dozen, delivered in Chicago, Illinois, less one and one-half per cent. on prompt delivery. The Nappanee Canning Company did not deliver the tomatoes. The market price advanced, and in consequence of the failure of the Nappanee Canning Company to perform its agreement, the appellee Reid, Murdoch & Co. was compelled to purchase tomatoes elsewhere at prices exceeding the contract price by $1,100. On October 5, 1897, the Nappanee Canning Company was insolvent, and that fact was known to its directors, its assets amounting to $9,000, and its liabilities to $19,000, all of which were then past due. The directors of the Nappanee Canning Company were its co-appellants, Berlin, Uline, Coppes, Hartman, Wysong, Whisler, Armey, Albin, and Emmert; Berlin being the president, and Uline the secretary, treasurer, and general manager of the company. The directors were sureties, or were otherwise legally liable for all of the debts of the canning company, and, to protect themselves against loss, they caused a mortgage or deed of trust of all the property of the canning company, real and personal, to be executed by that corporation, by its president and secretary, to one Mosiman, as trustee, to secure (1) the expenses of the trust; (2) all debts due from the corporation for tomatoes bought in 1897; (3) the debts due to the Farmers & Traders Bank, of Nappanee, Indiana, evidenced by notes executed by the directors for moneys used for said company, amounting to $4,712.10; (4) an account owing to Coppes Bros. & Zook; (5) a note for $1,100 due to one Barber, and certain other debts due to divers persons and corporations, aggregating $5,000; the claims classified as numbers one, two, and three, to be first paid in full. The trustee was to continue the business

until he could effect a sale of the property of the corpora-
tion. Samuel D. Coppes and Harry E. Coppes were part-
ners trading under the name of Farmers & Traders Bank,
and Coppes Bros. & Zook were stockholders of the Nap-
panee Canning Company. The corporation continued to
do business for about two weeks after the mortgage or deed
of trust was made, and was managed by Uline, its secre-
tary, treasurer, and general manager. None of the bene-
ficiaries of said mortgage or deed of trust, excepting Coppes
Bros. & Zook, and the directors of the corporation, knew
that the said mortgage or deed of trust was to be made
until after it was executed, and none of the creditors of the
company, excepting those just named, was demanding pay-
ment of the claims against it. The financial condition of
the canning company was better on October 5, 1897, than
on April 7, 1897. The company had other contracts for
tomatoes to the amount of at least 2,000 cases, which it re-
fused to fill. The claims mentioned in said mortgage or
deed of trust, and secured thereby, were just and *bona fide*
debts of the said canning company, and said mortgage or
deed of trust was executed by the authority of the entire
board of directors of said corporation. The canning com-
pany immediately put Mosiman in possession of the prop-
erty described in the mortgage or deed of trust, but without
any expectation or intention that the factory would run, or
business be done, more than two weeks. The acts of the di-
rectors in so securing to themselves, as indemnity, the prop-
erty of the canning company were intended to make it im-
possible, and did make it impossible for the appellee Reid,
Murdoch & Co. ever to enforce its contract, or to recover
damages for the nonperformance thereof, and they meant
thereby to shield themselves from further liability. Samuel
Mosiman paid nothing for the property mentioned in the
mortgage or deed of trust. The Nappanee Canning Com-
pany executed the said mortgage or deed of trust on Oc-
tober 5, 1897, for the express purpose of enabling said

directors to indemnify themselves against all liability incurred by either of them in its behalf, and with the further intention of leaving no property out of which the appellee Reid, Murdoch & Co. could make any part of· its claim, if it had a claim, and for the further reason that after the making of the contract with the appellee Reid, Murdoch & Co., the price of tomatoes had advanced about thirty cents per dozen. The said contract with the appellee Reid, Murdoch & Co. was broken, and the mortgage or deed of trust was executed for the purpose of enabling the canning company and its directors to reap the benefit of the advance in the price of tomatoes. The execution of the mortgage or deed of trust was a fraud upon the appellee Reid, Murdoch & Co., and as to the said appellee it is void. Said mortgage or deed of trust is valid as to the mortgagees, Barber, Mittenthal, guardian, Blumberg, Searer, and the City National Bank of Goshen. Mosiman is not entitled to any compensation for his services as trustee under said mortgage or deed of trust. The Nappanee Canning Company is indebted to the appellee Reid, Murdoch & Co. in the sum of $1,100.

The conclusions of law on the foregoing finding of facts are thus stated: "(1) That plaintiff is entitled to recover from the defendant, the Nappanee Canning Company, $1,100. (2) That the trust deed is void as to the following persons, namely: Francis E. Berlin, Barney Uline, Frank Coppes, Tobias Hartman, Henry Wysong, Jacob S. Whisler, Joseph S. Armey, John W. Albin, Ephraim Emmert, Coppes Bros. & Zook, and Farmers & Traders Bank. (3) That as to the City National Bank of Goshen, Indiana, Isaac Blumberg, and George Searer, and George Barber, M. H. Mittenthal, as guardian, said trust deed is valid, and plaintiff's rights are subject thereto."

The important questions in the case are presented by the exception to the second conclusion of law, and by the motion for a new trial. Was the mortgage or deed of trust

invalid as to the appellants, who were directors of the Nappanee Canning Company? Does the evidence sustain the finding that the appellee Reid, Murdoch & Co. is entitled to recover $1,100 from the canning company?

In this State it is settled by a long course of decision that an embarrassed or insolvent debtor may lawfully prefer one or more of his creditors, by payment, mortgage, pledge, or deed to the exclusion of the others. No statute forbids such preferences; no rule of law is understood to prevent them. *Ball* v. *Barnett,* 39 Ind. 53, and cases cited; *Lowry* v. *Howard,* 35 Ind. 170, 9 Am. Rep. 676; *McCormick* v. *Smith,* 127 Ind. 230; *Carnahan* v. *Schwab,* 127 Ind. 507; *John Shillito Co.* v. *McConnell,* 130 Ind. 41; *Peed* v. *Elliott,* 134 Ind. 536; *Rockland Co.* v. *Summerville,* 139 Ind. 695; *Heiney* v. *Lontz,* 147 Ind. 417; *Snyder* v. *Jellon,* 137 Ind. 449. The fact that the person whose debt is so preferred is a wife or other near relative does not affect the validity of such preference. *Schaeffer* v. *Fithian,* 17 Ind. 463; *Kyger* v. *F. Hull Skirt Co.,* 34 Ind. 249; *Sims* v. *Rickets,* 35 Ind. 181, 9 Am. Rep. 679; *Goff* v. *Rogers,* 71 Ind. 459; *Hogan* v. *Robinson,* 94 Ind. 138; *Hoes* v. *Boyer,* 108 Ind. 494; *Jones* v. *Snyder,* 117 Ind. 229; *Laird* v. *Davidson,* 124 Ind. 412; *Dillen* v. *Johnson,* 132 Ind. 75; *Fulp* v. *Beaver,* 136 Ind. 319; *Adams* v. *Curtis,* 137 Ind. 175.

In these cases the court seems to have proceeded upon the principle that if the debt was just and the transaction honest the preference would stand. So, too, it has been uniformly held that where a partnership exists, and the partners have possession of the partnership property, it may, notwithstanding the insolvency of the partnership, be applied by the partners to the payment or securing of the debts of the individuals composing the firm. *M'Donald* v. *Beach,* 2 Blackf. 55; *Frank* v. *Peters,* 9 Ind. 343; *Schaeffer* v. *Filhian,* 17 Ind. 463; *Johnson* v. *McClary,* 131 Ind. 105; *Old Nat. Bank* v. *Heckman,* 148 Ind. 490.

Manufacturing corporations, in this State, are governed by the same rules as individuals, and, although embarrassed or insolvent, may secure one or more creditors by mortgage, or otherwise, to the exclusion of all others, though equally meritorious. *Smith* v. *Wells Mfg. Co.,* 148 Ind. 333; *Henderson* v. *Indiana Trust Co.,* 143 Ind. 561; *Levering* v. *Bimel,* 146 Ind. 545, and authorities cited; *Sanford, etc., Co.* v. *Howe, etc., Co.,* 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713.

It is important to note at this point that this court is fully committed to the doctrine that an insolvent manufacturing corporation does not hold its property in trust for its creditors, or subject to any lien, legal or equitable, in their favor, in any other manner than such property is held by an insolvent individual debtor. *First Nat. Bank* v. *Dovetail, etc., Co.,* 143 Ind. 534, 543; *Henderson* v. *Indiana Trust Co., supra; Levering* v. *Bimel, supra; Smith* v. *Wells Mfg. Co., supra.*

It has also been held that an insolvent foreign corporation may mortgage its lands in this State to secure a *bona fide* antecedent debt, where such action is not prohibited by the statutes of the foreign state. *Nathan* v. *Lee,* 152 Ind. 232, 43 L. R. A. 820. And this court has expressly decided that the fact that the debt is due to a director, or other officer, or that such director or officer is surety for its payment, does not deprive the corporation, although insolvent, of the right to prefer it. *Levering* v. *Bimel,* 146 Ind. 545, 554, 555, 556.

The rules which have been applied in such cases are exhaustively examined in *Levering* v. *Bimel, supra,* and the conclusions announced in that case are fortified by very full and satisfactory references to the leading text-books, and to the previous decisions of this court. That case covers the entire ground of the present controversy, excepting only the validity of a preference given to a director where the vote of the director himself is necessary to authorize the

execution of the mortgage or other instrument securing the debt.

Counsel for appellees do not deny the soundness of the principles laid down in the foregoing cases. They say: "We are aware of the fact that our court is in line with the federal courts, and the better considered cases in the state courts, in not adhering to the doctrine of the so-called trust-fund theory respecting the assets of insolvent corporations; and we admit that it is the settled law of Indiana that until the court, by its officers, takes charge of the property of an insolvent corporation, it has·the same power and control over its property as an individual would have over his property, under like circumstances." But counsel say that "The sum and substance of our contention on this branch of the case is that the law will never permit a body of directors of an insolvent corporation to act as grantors for the corporation, in parceling out to themselves, as grantees, the assets of the corporation upon their unsecured claims, to the exclusion of other unsecured creditors. To permit this would be to violate the very spirit of equity. It is right that the directors of an insolvent corporation should have the power, so long as they retain dominion, to dispose of the assets, and prefer creditors to the same extent that a partnership or an individual can."

In deciding the question before us, it is to be borne in mind that a manufacturing corporation, under the statutes of this State, is strictly a private association, organized and conducted for private purposes only, enjoying no special privileges, and owing no duty to the public or to its creditors except such as is imposed by the terms of the statute under which it is formed, and by those general rules which apply to individuals engaged in business. Until its property passes into the custody of the law by seizure under proceedings in attachment, or by the appointment of an assignee, trustee, or receiver, the corporation may sell, transfer, pledge, or mortgage its property in the same manner

and subject to the same restrictions only as apply to the case of a private person. Such property is in no respect held in trust for the creditors of the association. The law of this State gives them no lien or claim upon such property. They have no right to look to the corporation or its directors to protect their interests. They deal with it at arm's length, and their attitude is antagonistic to the association. When asked to extend credit to it, all persons dealing with the corporation know that if it is, or thereafter becomes, insolvent, the whole of its property may be applied to pay or secure debts due to favored creditors, including officers and directors, and that the claims of all other creditors may be excluded and consequently lost. If, with this knowledge, credit is given, it can not be said that preferences subsequently conferred upon other creditors have violated any right which the law gave to the creditor whose claim was left unpaid and unsecured.

No statute gives to a creditor the right to demand an equal distribution of the assets of an insolvent private manufacturing corporation among its creditors. The maxim that, in case of insolvency, equality is equity has not the force of a statute requiring such a distribution. It is applicable only when the principles of equity are brought to bear upon the distribution of property lawfully in the custody of a court, where such court possesses the authority to make distribution upon that basis. The directors of a manufacturing corporation are not the agents or trustees of the creditors, but are simply and solely the representatives of the stockholders and of the corporation. There is no sufficient legal reason why they should be denied the right of preference in the event that the corporation becomes insolvent. And even if the vote of the director himself is necessary to authorize the execution of the instrument creating the preference, no legal wrong is done to the other creditors where such preference is given. The association is a legal entity distinct from the stockholders

and from the directors. The action of the directors is their action, and not their individual act. The vote of a majority is required to pass any resolution or order, but the action of such majority is not necessarily vitiated by the fact that one or more of the persons composing it is interested in the passage of the resolution. The duty of the directors is to the corporation and its stockholders, not to the creditors. If the corporation or its stockholders acquiesce in the disposition of the corporate assets made by the directors, and if such disposition is the payment of a just debt owing by the corporation, no matter to whom, it is difficult to perceive upon what legal ground a creditor can call such act in question. When it is understood that no trust exists in favor of creditors, that the directors are the agents of the stockholders and of the corporation only, and that they owe no special duty to the creditors of the company, it seems plain that, where the right to give preferences is recognized, the directors of an insolvent corporation may secure a *bona fide* debt owing to one of their own number.

As we have stated, it is established law in this State that an insolvent corporation may give preferences to the same extent and in like manner as an individual. In such transactions the corporation and its stockholders are the principal, the directors are their agents. If the vote of the director whose debt is secured is necessary to pass the resolution creating the preference, the only persons sustaining such relations to him as authorize them to object to his act are the stockholders and the corporation itself. The general rules governing the rights and duties of principal and agent apply in cases of this kind. The agent of a private person authorized to sell property may sell and convey to himself. Such sale is voidable, but not void. If his principal does not object within a reasonable time, or with full knowledge ratifies the sale, it will stand. We have been referred to no case in which it has been held that where such sale is made in good faith, and for a fair and sufficient

consideration, the creditors of the principal can avoid it on the ground of a violation of duty by the agent. *Fountain Coal Co.* v. *Phelps,* 95 Ind. 271; *Marsh* v. *Whitmore,* 21 Wall. (U. S.) 178, 22 L. Ed. 482; *Eastern Bank* v. *Taylor,* 41 Ala. 93, 100.

The rule is that where the principal affirms the act of an agent a stranger will not be permitted to controvert it. *Scott* v. *Detroit, etc., Soc.,* 1 Doug. (Mich.) 119. "As the principal or parties interested may confirm the sale, a 'mere stranger' can not make the objection that the trustee was the purchaser; or that the sale was irregular." Dillon, J., in *Buell* v. *Buckingham & Co.,* 16 Iowa 284, 85 Am. Dec. 516.

Two of the special findings of fact are in these words: "That the said directors were sureties or otherwise legally bound on all the indebtedness of the said canning company, and, desiring to secure themselves from such liability, they caused said canning company, at a meeting called for that purpose, to execute the following instrument in writing, to wit: [Here follows the mortgage or deed of trust to Mosiman.] That the claims mentioned in said trust deed were just and *bona fide* debts of said canning company, and said trust deed was executed by authority of the entire board of directors of the said canning company."

Did the fact that the directors were sureties, or otherwise legally bound for their payment, put it out of the power of the board of directors to secure the payment of these debts? The later and better authorities require us to answer this question in the negative. It was said in *Levering* v. *Bimel,* 146 Ind. 545, that the effect of the decisions referred to in the opinion was that an insolvent corporation is not to be denied the right to prefer a creditor or creditors, even where such preference inures to the benefit of its officers who are sureties upon the claims of the creditors preferred. And the court further declared that the broad doctrine that the officers of a corporation can not contract with it in their

own names is unreasonable, and that the fact that the officer of the corporation would be enabled by reason of his position to outstrip the other creditors in the race of diligence in collecting or securing the claims upon which they were liable was not sufficient to deprive the corporation of the right to prefer such claims.

The courts holding that an interested director can not vote, or even be counted for the purpose of making a quorum, seem to have proceeded entirely upon the theory that the director was a trustee for or an agent of the creditors, and therefore could not be permitted to advance his own interests at the expense of his principal or the *cestui que trust*. The directors are the agents and trustees of the corporation and its stockholders. As a director of an insolvent corporation is not a trustee for its creditors, and owes them no duty, where the debt to which preference is given is an honest and just debt of the corporation, the circumstance that the director is incidentally benefited by such preference, does not, in our opinion, absolutely disqualify him to take part in the proceedings of the directors, or to vote upon the proposition to secure such debt. If the corporation and the stockholders acquiesce in the action of the director creditors, outside creditors, who are strangers to the corporation, and have no lien or claim upon its property, can not impeach the transaction.

In *Schufeldt* v. *Smith,* 131 Mo. 280, 31 S. W. 1039, 29 L. R. A. 830, 52 Am. St. 628, creditors of a corporation brought suit to set aside a deed of trust securing certain debts for which the directors were personally liable, two of which, amounting to $14,000, were evidenced by the notes of James Walsh, the president of the corporation, which the corporation had assumed and agreed to pay. The resolution authorizing the execution of the deed of trust was passed by three directors, of whom Walsh was one. The trial court held the deed of trust void, but its decision was re-

versed on appeal, the supreme court of Missouri holding that, as the debts were just, the preference was valid.

The facts upon which *Buller* v. *Harrison Mining Co.,* 139 Mo. 467, 41 S. W. 234, 61 Am. St. 464, was decided, were as follows: The corporation had but three stockholders, who were also its sole directors. The company owed them $100,000, and four years after it ceased to be a going concern they caused all the property belonging to it to be transferred to themselves in payment of their debt. Suit was brought by a creditor to set aside the transfer, and the lower court held the deed void. But on appeal the supreme court said: "Can an insolvent corporation prefer its director creditors, in the disposition of its property, to the exclusion of the general non-director creditors, so long as the property of the corporation remains in its custody and possession, and the preference is made in good faith, to pay off and discharge honest obligations?" The court answered its question in the affirmative, and sustained the deed.

In *Garrett* v. *Burlington Plow Co.,* 70 Iowa 697, 29 N. W. 395, 59 Am. Rep. 461, the court said that counsel "insist that the directors of an insolvent corporation can not take from it security, by mortgage or other conveyance creating a lien upon its property, even though given in good faith, and without fraud in the transaction. We are not prepared to admit this proposition. A creditor may accept payment or security from an insolvent debtor free from any claim of other creditors. A corporation may make payment of its debts, or give its property in security therefor, just as a natural person may do. If, therefore, a director holds the indebtedness of an insolvent corporation, he may take payment or security in a good faith and honest transaction. No reason can be given why a director who holds a valid debt against his corporation may not, though it be insolvent, in a fair and honest way, take its property in security."

In *Planters Bank* v. *Whittle,* 78 Va. 737, an insolvent corporation against which suits were pending for the ap-

pointment of a receiver, for the purpose of securing certain notes on which the directors were accommodation indorsers, assigned as collateral security sundry bonds, constituting a valuable part of its assets. It was held that the assignment was valid if made in good faith.

The supreme court of Missouri, in *Foster* v. *Mullanphy, etc., Co.,* 92 Mo. 79, 4 S. W. 260, sustained the validity of a deed of trust given to secure debts owing to four of the directors, who voted for the resolution of the board authorizing the execution of the deed.

The right of a corporation in embarrassed or failing circumstances to prefer debts due to its directors, or for which they are liable as indorsers, sureties, or otherwise, has been upheld in many other cases, among which the following may be cited: *Warfield, etc., Co.* v. *Marshall County, etc., Co.,* 72 Iowa 666, 34 N. W. 467, 2 Am. St. 263; *Bank of Montreal* v. *Potts Salt, etc., Co.,* 90 Mich. 345, 51 N. W. 512; *Farmers, etc., Bank* v. *Wasson,* 48 Iowa 336, 30 Am. Rep. 398; *Central R., etc., Co.* v. *Claghorn,* 1 Speers' Eq. (S. C.) 545; *Garrett* v. *Burlington Plow Co.,* 70 Iowa 697, 29 N. W. 395, 59 Am. Rep. 461; *Reichwald* v. *Commercial Hotel Co.,* 106 Ill. 439; *Sargent* v. *Webster,* 13 Met. (Mass.) 497, 46 Am. Dec. 743. In the latter case it was said by Shaw, C. J.: "In the first place, it is very clear that the plaintiff, Sargent, though a member of the corporation, had a right to deal with them as with a person and body politic. He could take security or attach property, or take any other measure that another creditor could; and though he might be liable, in a qualified way, for the debts of the corporation, it was a special liability created by statute, and one which can be enforced only in the mode provided by statute."

Our conclusion, therefore, upon the reasons and authorities herein set out, is that the deed of trust executed by the Nappanee Canning Company to Mosiman, as trustee, to secure, among others, debts for which the directors of that

company were liable, was valid, and enforceable against the property described in it.

The findings of the court to the effect that the execution of the trust deed rendered it impossible for the appellee Reid, Murdoch & Co. to recover and collect damages for the breach of their contract with the canning company; that the directors intended to shield themselves from further liability, to indemnify themselves against loss, and to obtain the benefit of the advance in the price of the goods sold to the appellee; and that the trust deed is fraudulent as to each of the directors beneficially interested therein,—are wholly unimportant. The directors had a right to cause the deed of trust to be made to secure themselves against loss. As it included all the property of the company, its necessary effect was to render it impossible for the appellee to collect any claim held by it out of the property of the corporation. And no facts are found which establish fraud. *Peters* v. *Bain,* 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696. It was not a fraud for the directors to do what they had a legal right to do, nor was the deed rendered fraudulent by the consequences of loss to the appellee Reid, Murdoch & Co. which may have resulted from it. The facts found sustain the conclusion of the court that the appellee Reid, Murdoch & Co. was entitled to recover from the Nappanee Canning Company $1,100 as damages, and there was evidence to support the finding.

The judgment that the appellee Reid, Murdoch & Co. recover from the Nappanee Canning Company $1,100, and costs in that behalf only, is affirmed. The judgment that the mortgage or deed of trust, executed by the Nappanee Canning Company to Mosiman, as trustee, is void as to Francis E. Berlin, Barney Uline, Frank Coppes, Tobias Hartman, Henry Wysong, Jacob H. Whisler, Joseph S. Armey, John W. Albin, Ephraim Emmert, Coppes Bros. & Co., and the Farmers & Traders Bank, is reversed, with

directions to the court to restate its second conclusion of law in accordance with this opinion, and to render judgment in favor of the said appellants, sustaining said mortgage or deed of trust; and the judgment in favor of the said City National Bank of Goshen, Isaac Blumberg, George Searer, George Barber, M. H. Mittenthal, as guardian, sustaining said mortgage or deed of trust, is hereby affirmed.

## DISSENTING OPINION.

HADLEY, J.—It is conceded that this court has adopted the rule that a corporation, while prosecuting its corporate business, though with liabilities greater than assets, may prefer its creditors, as may a natural person, and that such preference may extend to an officer or director of the corporation when conferred by the vote of a disinterested majority of the board of directors. I am impressed, however, after a thoughtful consideration of the subject, that the rule has been already carried in this State as far as reason and judicial precedent will warrant, and, in so far as it is held in the majority opinion in the case at bar that the directors of an insolvent corporation, in contemplation of its early dissolution, may appropriate the entire assets of the corporation to the exclusive security of their own preexisting personal liabilities, I am unable to agree with my brethren, and am constrained to enter my earnest protest.

The holding is a step in advance of any previous ruling of this court, is forbidden by the decided weight of authority, as I shall endeavor to show, and invests corporation directors with such temptations and powers for mischief and moral wrong that, if no other reason existed, it should be denied on the ground of public policy. In support of this view I am not driven to what is commonly called the trust-fund doctrine, that is, to a line of decision to the effect that upon insolvency equity seizes the assets of a corporation for equal distribution to the creditors,—and no preference can

be given to any one. This latter doctrine has been repudiated in this and in most other states of the Union to the extent of recognizing the right of insolvent corporations to prefer their common, unofficial creditors to the same extent, and by the same modes, that an insolvent individual may prefer his. But as to official or director creditors, it is quite as generally held that their position as managing agents gives them such an unequal and unfair advantage over other creditors that they will not be permitted by courts of chancery to profit by their superior knowledge and position in a race of diligence.

The position occupied by directors is one of trust, call it what we may. They receive the property of others, act for others, and are accountable to others. They are bound to devote the property entrusted to them exclusively to the purposes of the corporation. Any departure in this is a misappropriation for which they are answerable to the stockholders or the creditors. The assets not being their own, they hold and administer them primarily, for the benefit of the stockholders, secondarily, for the use of those who may by contract or operation of law succeed to the interests of the stockholders. While the corporation is solvent, the active fiduciary relation is between the directors and the stockholders, who are the real parties in interest. When insolvency occurs the stockholders, while retaining the legal title, by force of law, part with all beneficial interest in the assets, and the same is transferred to the creditors. The possession and control of the directors being unchanged by the advent of insolvency they thereafter necessarily hold the property, not for themselves, but in trust for the creditors who now have the exclusive interest. It at once becomes their duty to apply the assets to the payment of the debts; not necessarily *pro rata,* because the creditors have no mutual relation among themselves; but they hold the assets in trust for application to the debts, either *pro rata* or preferentially, as they themselves deem the merits

of the creditors to be.  The directors, being the corporation
for the purpose of judging among the creditors, can not
select themselves from among the creditors for preference,
because they can not be both judges and creditors at the
same time.  It seems absurd to say that the same persons
may constitute different identities of themselves, so that,
as directors of a corporation, they may convey, or mortgage,
or contract, with themselves as private persons.  The rela-
tion of debtor and creditor implies antagonism,—a counter-
vailing interest of distinct and independent parties.  The
interests of self-preferring creditors are coöperative and the
same.  The more anxious as a creditor to obtain the prefer-
ence, the more willing and ready as a debtor to grant it.
This puts the director in a situation wholly incompatible
with his duty to serve all stockholders and creditors fairly
and alike.  While not a trustee in a technical sense, there
can be no doubt that he occupies such a fiduciary position
towards the stockholders and creditors as calls for a faithful
performance of duty, and conduct entirely free from any
use of his position to advance his personal interests beyond
those of others of equal merit.  We have many American
decisions in support of this view, from the more recent of
which in the several states, though often not the best con-
sidered, I briefly quote:  "It seems to be well settled that
directors of· an insolvent corporation, who are creditors of
the company, can not secure to themselves any preference
or advantage over other creditors in the payment of their
claims."  *Bonney* v. *Tilley,* 109 Cal. 346, 42 Pac. 439,
quoted approvingly in *Merced Bank* v. *Ivett,* 127 Cal. 134,
59 Pac. 393, decided December 11, 1899.  "It is not good
morals, or good law."  *Fishel* v. *Goddard* (Col.), 69 Pac.
607, 612.  (July 5, 1902.)  "We think it very clear, there-
fore, that when the validity of these mortgages, to secure
debts upon which the directors were indorsers, was ques-
tioned by other creditors of the corporation, they should
have been classed as instruments rendered void by the legal

principle which prevents directors of an insolvent corpora-
tion from giving themselves a preference over outside cred-
itors." *Atlas Tack Co.* v. *Exchange Bank,* 111 Ga. 703
710, 36 S. E. 939. (August 7, 1900.) "The law is, how-
ever, that an insolvent corporation can not prefer a cred-
itor who at the time is a director therein." *Rockford, etc.,
Co.* v. *Standard, etc., Co.,* 175 Ill. 89, 51 N. E. 642, 67 Am.
St. 205. (October 24, 1898.)

" In *Hays* v. *Citizens Bank,* 51 Kan. 535, 33 Pac. 318,
it was held that the directors and managers of a corpora-
tion, who were creditors of the same, could not prefer them-
selves, leaving the question undecided as to whether other
creditors might be preferred. The ground of that decision
is that the directors are the agents of the stockholders and
creditors, and that their interests as creditors would be
inimical to their duties as agents. They occupy a fiduciary
relation to the creditors and stockholders and may not take
advantage of their superior information and opportunity to
gain an advantage over those whose interests they are guard-
ing; nor are they permitted to contract with themselves as
they may with third parties." *Grand, etc., Co.* v. *Rude
Bros. Mfg. Co.,* 60 Kan. 145, 150, 55 Pac. 848. (1899.)
"Officers of a corporation, who are also its creditors, can
not lawfully pay their own claims in preference to other
creditors, when the corporation is insolvent." Head•note 2,
*James Clark Co.* v. *Colton,* 91 Md. 195, 46 Atl. 386, 49 L.
R. A. 698. (1900.)

"The directors of an insolvent corporation, being its cred-
itors, can not take advantage 'of their fiduciary•relation, and
deal directly with themselves, to the injury of others in
equal right. If they do, equity will set aside the transac-
tion, at the suit of creditors of the corporation or their rep-
resentatives, without reference to the question of any actual
fraudulent intent on the part of the directors; for the right
of the creditors does not depend upon fraud in fact but upon
the violation of the fiduciary relation of the directors.' "

*Taylor* v. *Fanning* (Minn.), 91 N. W. 269. (July 3, 1902.)

"At common law a debtor may prefer a creditor to the exclusion of others—but a different rule prevails when the creditor is a director of an insolvent corporation debtor. The directors in such case are not strictly trustees for the general creditors, though sometimes so called,—but they owe them a duty, which is inconsistent with the taking of a security for prior indebtedness to their detriment." *Symonds* v. *Lewis,* 94 Me. 501, 48 Atl. 121. (1901.)

"The corporation was plainly insolvent, not a going concern, nor one with any prospect of going on at any time in the future. It could not in such condition prefer its directors, secretary and treasurer." *King* v. *Wooldridge,* 78 Miss. 179, 28 South. 824. (October, 1900.) "The proposition that an insolvent corporation can not prefer a debt on which its officers and directors are bound as sureties is now thoroughly established in this state." *Williams* v. *Turner* (Neb.), 88 N. W. 668. (January 8, 1902.) "The law will not allow the stockholders and officers of the corporation to take advantage of their knowledge of the insolvent condition of the concern, and their power to *use and control the assets,* to pay their own debts, or to relieve them from special liabilities to the injury of other creditors. *Graham* v. *Carr,* 130 N. C. 271, 41 S. E. 379. (May 6, 1902.)

"The law applicable to these cases is extremely clear. While directors of corporations are not trustees in a technical sense, there is yet no doubt that they occupy a fiduciary position towards stockholders and creditors of the corporation, and that they come within the designation of persons filling a fiduciary relationship. In fact, they hold a position of the highest trust, and will therefore be required to execute it with the utmost fidelity. This being so, it is plain that the defendants could not use their official position to advance their individual interests. But this is precisely what they did, that is, with actual knowledge that the

corporation was insolvent." *Smith* v. *Putnam,* 61 N. H. 632. (1882.)

"The receiver of an insolvent corporation may recover its assets withdrawn after it has become insolvent in order to secure some of its directors against a liability incurred for the corporation. A preference of that character can not stand, although at the time it is given there is no statutory prohibition against it." Head note, *Taylor* v. *Gray,* 59 N. J. Eq. 621, 44 Atl. 668. (November 22, 1899.)

"It is the settled law of this commonwealth, that an insolvent debtor, whether corporation or individual, may prefer *bona fide* creditors; but if the creditor benefited be a director or other officer possessed of corporate power and corporate knowledge of the insolvency of his corporation, then he has an advantage over other creditors whose claims may be of equal merit; he has knowledge that his debt is in peril, and has the power to prefer himself. As he is in a sense trustee for all the stockholders and creditors, equity forbids that he should act solely for himself, regardless of the interests of those for whom he is trustee." *Mueller* v. *Monongahela, etc., Co.,* 183 Pa. St. 450, 458, 38 Atl. 1909. (1898.)

"The directors of an insolvent corporation are by virtue of their position debarred from preferring debts of the corporation due to themselves." Head note, *Olney* v. *Conanicut Land Co.,* 16 R. I. 597, 18 Atl. 181, 5 L. R. A. 361, 27 Am. St. 767. (August 10, 1889.)

"When a corporation is insolvent and has ceased to be a going concern, and its officers know, or ought to know, that suspension is impending, then such officers are so far trustees that they may not transfer corporate property to themselves in payment of debts due them, and that such a transfer constitutes a fraud in law." *Slack* v. *Northwestern Nat. Bank,* 103 Wis. 57, 64, 79 N. W. 51, 74 Am. St. 841. (April 25, 1899.) Of same import, see *Burnham, etc., Co.* v. *McCornick,* 18 Utah 42, 55 Pac. 77. (October 22, 1898.) To the same effect, see *Harding* v.

*Hart,* 51 C. C. A. 264, 113 Fed. 304, 342. (January 7, 1902.) *Kittel* v. *Augusta, etc., R. Co.,* 78 Fed. 855. (February 22, 1897.) *Northwestern, etc., Ins. Co.* v. *Cotton, etc., Co.,* 70 Fed. 155. (October 21, 1895.) *Bosworth* v. *Jacksonville Nat. Bank,* 12 C. C. A. 331, 64 Fed. 615. (November 27, 1894.) *Sutton Mfg. Co.* v. *Hutchinson,* 11 C. C. A. 320, 63 Fed. 496. (October 1, 1894.) *Consolidated, etc., Co.* v. *Kansas City, etc., Co.,* 43 Fed. 204. (September 5, 1890.)

It is not clear how *Sanford, etc., Co.* v. *Howe, etc., Co.,* 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713, lends any support to the proposition that directors, or a majority of the board of directors, may prefer themselves by appropriating all the corporate assets on preëxisting liabilities, after they have determined that the corporation is hopelessly insolvent, and will in a few days abandon its corporate business. In that case Justice Brewer rests the court's ruling upon the fact that the stockholders expressly, by vote, authorized the mortgage, and that at the time it was executed the corporation was a going concern, and intended to continue in business, and in fact did continue, and paid out $30,000 on its obligations, other than those secured, in the usual course of business; and it was also at the time believed by all parties to be solvent, and was in fact solvent if the assets were worth as much as they cost. The trend of the decision is indicated by the following sentence, at page 317: "It is often said that directors may not take advantage of their position and power to secure personal advantage to themselves, but that proposition has no application here, for the corporation itself directed this mortgage." To the same effect, see, also, the following text-writers: Cook, Corp. (4th ed.), §692; Elliott, Priv. Corp. (3d ed.), §189; Field, Corp., §174; Rees, Ultra Vires, §155; Spelling, Priv. Corp., §713; Taylor, Priv. Corp. (4th ed.), §759; Thompson, Corp., §§6503, 8496; Morawetz, Priv.

Hague v. First Nat. Bank.

Corp. (4th ed.), §787; Clark & Marshall, Priv. Corp., 2414.

Arkansas, Ohio, Massachusetts, New York, and a number of other states, have statutes restricting the right of insolvents to prefer any creditor. Tennessee, Texas, Washington, South Dakota, and perhaps some other states, seem to adhere to the trust-fund doctrine.

It has always been the rule that the holder of a secret equity shall not assert it to the injury of one who has been innocently misled thereby, and in what way is the principle different, when the directing agents of an insolvent corporation, with that full knowledge of the financial condition of the concern the law requires them to have, continue to conduct the business, keep the public records fair, invite public confidence, solicit the people to deal with them, and thus go on under cover, speculating on the capital fund of the association, until it has been wasted to a point that will only secure their personal liabilities, then, under claim of acting for the corporation, deliver to themselves, as creditors, all that is left of the assets? I am mistaken if the deception of the one is not as culpable as the other, and if the conduct of the latter does not violate the principles of common honesty.