ATLAS TACK CO. *et al. v.* EXCHANGE BANK *et al.*

1. A creditor by accepting a mortgage in his favor which had been executed without a request from him, and of which he had no knowledge until it was actually tendered to him, acquiesced in and ratified all that had been done in his behalf by the person who procured the execution of the instrument, and occupied the position of giving to all the terms and stipulations therein embraced an assent relating back to the time of its execution.

2. When in such a case a mortgage was, at the instance of the directors of an insolvent trading corporation, executed in favor of a creditor thereof, and purported to secure the payment of a promissory note due to that creditor, upon which the directors were individually liable as indorsers, the mortgage also reciting that it was made " for the purpose of saving harmless the said accommodation indorsers," then such mortgage, when its validity was questioned by other creditors of the corporation, should, unless falling within an exception to the general rule, have been classed as an instrument which was rendered void by the legal principle forbidding such directors from giving themselves a preference over outside creditors, and not as a security which was good as having been given in the exercise of a statutory right to prefer a particular creditor.

3. Such an exception might arise if the mortgagee in question, at the time of giving credit, or the directors at the time of becoming liable on the paper, made with the corporation a valid and binding contract for additional security by mortgage to be given on demand, or when such a contingency should occur ; but a contract of this kind, to be effectual, would have to be sufficiently clear and explicit in its terms to be capable of enforcement, and would have to constitute a part of the consideration upon which the credit was extended, or the liability as indorsers assumed by

the directors. There was no such contract in the present case, the undertaking or agreement set up as such being entirely too loose and indefinite in its terms to meet the requirements of the law in this respect.

4. As this case was tried upon lines entirely at variance with what is above laid down, there must be another hearing, which should be had in the light of the principles now announced, and the result of which should be in accord therewith.

Argued July 21, — Decided August 7, 1900.

Equitable petition—interventions. Before L. D. Moore, judge pro hac vice. Bibb superior court. August 9, 1899.

*Hill, Harris & Birch, Hall & Wimberly, C. P. Steed, J. L. Hardeman, Anderson & Grace, I. L. Harris, G. S. Jones,* and *A. W. Lane,* for plaintiffs.

*Bacon, Miller & Brunson, Dessau, Bartlett & Ellis, Hardeman, Davis & Turner,* and *Ryals & Stone,* for defendants.

LEWIS, J. 1, 2. This case was here at March term, 1897, and is reported in 101 *Ga.* 391, wherein its general nature is sufficiently indicated. This court simply held, as to the vital question in the case, that the judge erred in directing a verdict in favor of the mortgagees. It did not undertake to decide the controlling questions now dealt with in the headnotes; nor is there any intimation in the opinion of Justice Fish touching the questions which now engage this court's attention. On the contrary, on page 394 of his opinion, he recognizes the fact that it appears that none of the mortgagees asked to be preferred, and none of them, with one exception, knew that the mortgages had been executed until after they were filed with the clerk for record. It further appears that one of the purposes for which the mortgages were given, as expressed therein, was to secure harmless the accommodation indorsers or guarantors. While the motion for a new trial in the present case presents a number of questions, the same, upon such of its facts as are undisputed, really turns upon and should be controlled by the law announced in the preceding headnotes. The record discloses the fact that the Macon Hardware Company was a corporation composed of three persons, L. E. Culver, H. C. Tindall, and J. C. Van Syckel, who owned its entire stock, and who were also its directors. On December 23, 1893, there was a meeting of its stockholders, at which meeting it was unani-

mously resolved that the corporation had become utterly insolvent and incapable of continuing its business with safety to its creditors; that it was impossible to attain the real objects for which the corporation was formed, namely, the carrying on of a wholesale hardware business in the city of Macon, Ga., and that the failure of the company was and had become inevitable; which statements are confirmed as the truth in the petition of said parties in this case for the appointment of a receiver, and in which they express a desire to surrender their charter.  In that petition is an express declaration to the effect that the franchises of the corporation are "here surrendered." It is alleged in the petition that, prior to its filing, petitioners had executed mortgages to certain of its creditors to the amount of nearly $75,000.  The entry of filing by the clerk indicated that the petition was filed a day before these mortgages were given.  An attempt was made on the trial of the case to show. that this was a mistake in the date, and that it was really filed on December 23; but we deem it unnecessary to go into that question. For the purpose of determining what we conceive to be the controlling issues, it is sufficient to say that the record clearly shows very little space of time between the resolution adopted by the stockholders, and the mortgages given under a resolution of the stockholders by the directors, the defendants in error contending they were given the same date. However this may be, it is patent that, when these mortgages were given, the stockholders and directors not only knew of the corporation's insolvency, but had resolved on a discontinuance of its business; and by its action on that date had thereby practically ceased to be a "going corporation," and had abandoned the idea of continuing its business, on account of its being absolutely and hopelessly insolvent.

Prior to the act of 1894, we recognize the fact that even an insolvent corporation could prefer its creditors by mortgages; and the fact that one of its officers or directors may be incidentally benefited thereby in consequence of being indorser on the notes secured by the mortgages does not necessarily render them invalid.  Such was the decision in *Weihl* v. *Atlanta Furniture Co.*, 89 *Ga.* 297, which was afterwards affirmed in *Milledgeville Co.* v. *McIntyre*, 98 *Ga.* 503.  We do not think there is any-

thing in the facts of those two cases which conflicts with the ruling herein made. Those were going concerns at the time of the execution of the mortgages. On page 506 of the latter case Justice Lumpkin (now Presiding Justice), distinguishing it from the decision in *Lowry Banking Co.* v. *Empire Lumber Co.*, 91 *Ga.* 624, says: " Had. they in good faith been endeavoring to secure creditors who were asking to be preferred, it would, as in the present case and in the case cited from 89th *Ga.*, have been a different matter; for where directors, in behalf of the corporation, have simply undertaken to prefer certain of its bona fide creditors at their instance and upon their demand, the case presented is one in which a court of equity has no power to interpose or interfere." But the case at bar is quite different. It appears that these mortgagees had not asked to be preferred, and that the mortgages were not given at their instance or demand, but that on the contrary they had no knowledge of them until they were delivered after their record. Besides this, they were executed at a time when the corporation, through its officers having entire charge of its business and in fact owning all its stock, had resolved to suspend business, and had reached the conclusion that it was utterly impossible for it to carry out the purposes for which it was chartered. It is a well-established principle of law that when a corporation has reached this condition, its assets should be really held by its officers in trust for its creditors; and it is, to say the least of it, questionable whether under such circumstances it can make a preference for any creditor. There is really a conflict of authority as to whether or not an insolvent corporation may prefer its creditors upon the same principle that such a privilege is allowed to individuals. In the absence of a statutory prohibition on the subject, some courts have decided that a corporation has the same power of disposing of its property as an individual has. In 5 Thompson's Commentaries on the Law of Corporations, § 6496, it is declared: " But, in adopting this hasty conclusion, they have overlooked the fact that the analogy between an insolvent individual and an insolvent corporation wholly fails in this,— that, although an insolvent individual may turn over his property to certain of his creditors whom he desires to prefer, and may, by so doing, hinder and delay the others, yet he merely

hinders and delays them; he does not, by that act, destroy himself; he still lives; and he may, and often does, get on his feet again, and acquire property and discharge his previous obligations. But when a corporation becomes insolvent, and ceases to have the means of carrying out the objects of its creation, and dispossesses itself of all its property, it destroys itself, and becomes ipso facto dissolved, and in fact is regarded as a dissolved corporation for many purposes, having reference to the rights of creditors."

The author, in § 6504, further says: "After the corporation has actually become dissolved and has gone into liquidation, then there is no room for controversy upon the question; for then its assets, which were previously a trust fund for its stockholders, become a trust fund for its creditors and stockholders; and its directors, if they remain in custody of those assets, hold them as trustees for its creditors first and its stockholders next. The principle here spoken of is not necessarily confined to that formal dissolution which takes place under the judgment or decree of a court of competent jurisdiction; but it equally extends to that de facto dissolution which takes place when the corporation suspends business by reason of insolvency and goes into liquidation. The governing principle is, that the directors and managers of insolvent corporations are trustees of the funds, as well for the creditors as for the corporation, and are bound to apply them pro rata, and can not use them to exonerate themselves to the injury of other creditors." When a corporation is insolvent in the sense that it has not sufficient assets to discharge its debts, we can conceive how it could with propriety borrow money, and secure the same by mortgage upon its property, for the purpose of endeavoring to work out of debt and discharge its obligations. Under such conditions, it may also secure an antecedent debt while it proposes to continue actively in business; and if it does so purely and solely for the purpose of securing a creditor, the incidental benefit that one of its officers may derive from such security by being indorser on such a debt will not necessarily render that security invalid. This, as we understand it, is as far as this court has gone in its adjudications on this subject even prior to the act of 1894. But we know of no decision of this court validating a mortgage

given after the corporation had not only become insolvent, but had resolved, through its controlling officers, that it would liquidate its claims, surrender its charter, and attempt to follow its business no further. We do not decide that such a mortgage would necessarily be void under the liberal view once allowed by our statute touching the right of a debtor to prefer a creditor, which has been applied to corporations as well as individuals. It is not necessary to decide that question in this case; though we must confess we do not see how the force of the argument can be avoided that when directors of a corporation have put themselves in a condition in which they necessarily occupy the position of trustee for creditors, as seems to have been done in the present instance, before or at least when these mortgages were given, they would be violating this trust by any special preference for a particular creditor to the injury of its creditors generally. In this connection see Bump on Fraudulent Conveyances (4th ed.) 192, where it is declared: "It seems that there are circumstances in which an insolvent corporation can not prefer any creditor." The author then quotes the following from Kankakee Co. *v.* Kampe, 38 Mo. App. 229: "When a corporation is hopelessly insolvent, and there is no reasonable or well-founded hope for a continuance of its business, and these facts are known to its officers and directors, then all the assets of the corporation become a trust fund in the hands of the directors to be administered by them as trustees or agents for the equal benefit of all the creditors of the concern, and any attempted preferences, either in favor of the directors themselves or of a stranger, will not be upheld." He further adds: "In equity the assets of a corporation hopelessly insolvent become a trust fund for the benefit of its creditors, to be managed by the directors, and after such confessed insolvency the directors can not, in equity, secure any advantage to themselves or to a creditor." Sutton Mfg. Co. *v.* Hutchinson, 63 Fed. Rep. 496; Wisconsin Bank *v.* Lehigh Co., 64 Fed. Rep. 497; Phipps *v.* Harding, 70 Fed. Rep. 479.

We need not, however, go to that extent in this case. It appears from the record that these mortgages were executed under resolution of the stockholders made at the time of a practical dissolution of the corporation; for in them is a recital

to this effect: "Now, for the better securing the payment of the aforesaid promissory notes to the said Exchange Bank of Macon, and for the purpose of saving harmless the said accommodation indorsers or guarantors [who were the shareholders of this corporation], the said Macon Hardware Company hereby grants," etc. Then follows the mortgage upon the property to secure the debt. It also appears from the record that these directors gave to themselves a mortgage as directors, which covered an alleged indebtedness of $13,000, and that this mortgage was made to them as indorsers on the notes of the Macon Hardware Company, which notes were then outstanding, and the holders of which were then unknown. Unquestionably that was a direct effort to secure themselves and nobody else. In reply to the recital in these mortgages, the directors were permitted by the court below to testify that their real intention was, not to secure or indemnify themselves against loss, but solely to prefer creditors who had befriended them. There is no pretence that the recital in the mortgage, to the effect that it was made for the purpose of saving harmless indorsers or guarantors, was there by mistake. It is a solemn declaration in a sealed instrument as to one exact purpose of its execution; and we think, under every principle of law bearing upon the subject, that the makers of such an instrument, in the absence of any fraud, imposition, or mistake, would be estopped from contradicting the terms of such a recital, and its absolute truth. In *Terrell* v. *Huff*, 108 *Ga.* 655, it was held that where a deed was unambiguous, parol evidence of declarations by the grantor, explanatory of its intent and meaning, was inadmissible. In *Hill* v. *King Co.*, 79 *Ga.* 106 (3), it was held: "A party to a contract can not, by proving what he said or wrote to a third person after the contract was entered into, show either what it means or what he understood it to mean. Such evidence is not admissible." It follows that these creditors, when they accepted the mortgages which had been executed without any request, and without authority until they were actually tendered, necessarily acquiesced in and ratified all that had been done in their behalf by the party who procured the execution of the instrument, and occupied the position of giving to the terms and stipulations embraced

therein an assent relating back to the time of their execution. We think it very clear, therefore, that when the validity of these mortgages, to secure debts upon which the directors were indorsers, was questioned by other creditors of the corporation, they should have been classed as instruments rendered void by the legal principle which prevents directors of an insolvent corporation from giving themselves a preference over outside creditors.

3. To this general rule the record discloses no exception in favor of the mortgagees. Such an exception might arise if the mortgagees, at the time of giving the credit, or the directors, at the time of becoming liable on the paper, had made with the corporation a valid and binding contract for additional security by mortgage to be given on demand. No such contract was made in the present case. There was, as to the mortgage given one of the creditors, some evidence tending to show that one or more of the directors told a party representing this creditor, in effect, that they would see him protected, or would protect him. Such testimony was loose and indefinite in its terms. There was nothing to indicate that the protection meant that a mortgage upon the assets of the corporation would be given in the event of its insolvency. It was just as susceptible of the meaning, as the directors had indorsed the debt, that the creditor would be protected through their individual obligation as guarantors.

4. In one of the grounds of the motion for a new trial complaint is made that the court erred in refusing to give in charge to the jury the following written request: "It is stated in some of the mortgages that the purpose of giving the mortgages was to secure the promissory notes which the directors had indorsed, and to save harmless the directors who were indorsers on the notes of the Macon Hardware Company. This statement in the mortgages estops both the Macon Hardware Company, and the holders of the mortgages, from denying that such was its purpose in making the mortgages." And further, in refusing to give in charge the following written request: "Evidence has been submitted to you as to the intent of the maker in executing the mortgages; but I charge you that such evidence will not release the maker of such mortgages, or the creditors, from the force of such estoppel. If the directors had the purpose of sav-

ing themselves harmless as to their indorsements, then, although the directors may have also had in view the securing of debts due to persons [with whom they dealt and were under obligations],this would not render the mortgages valid, and if you so believe, you should find against the validity of mortgages given to secure debts which were indorsed by the directors of the Macon Hardware Company." We think these requests to charge are entirely in accord with the law applicable to this main issue in the case. In fact the record discloses that the case was tried upon lines entirely at variance with what is above laid down; and it follows, therefore, that there should be another hearing, which should be had in the light of the principles now announced, and the result of which should be in accord therewith.        *Judgment reversed. All the Justices concurring.*