In the Matter of Beth C. PHARR–LUKE, Debtor.

Smith Drug Company, Division of J.M. Smith Corporation, Plaintiff,

v.

Beth C. Pharr–Luke, Defendant.

Bankruptcy No. 98–21585.
Adversary No. 99–2029.

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

June 30, 2000.

Flay Cabiness, Brunswick, GA, for plaintiff.

William Orange, Brunswick, GA, for defendant.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

The above-captioned case seeking determination that certain debts of the Defendant to the Plaintiff are non-dischargeable was tried on March 9, 2000. This court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I). Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, and based on the evidence and applicable authorities I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

This case arises out of a series of transactions dating back several years by which corporations or partnerships, which the Debtor controlled, financed inventory of a retail drug store. A comprehensive pretrial stipulation was entered by the parties outlining the facts relative to these business transactions. That stipulation is attached to this opinion as Exhibit "A" and is fully incorporated herein. In order to set the stage for an analysis of the legal conclusions which the Court must make, that stipulation is summarized and simplified in the text of this Order.

In 1993 the Debtor, acting on behalf of a corporation that was formed shortly thereafter known Manana Si, Inc. ("Manana Si"), pledged certain inventory of a pharmacy known as The Medicine Shoppe to the Bank of Fitzgerald. After the corporation was duly formed, the Debtor caused the first note to be paid off and received additional advances from the Bank of Fitzgerald all of which were also secured by the inventory and other assets of Manana Si. Subsequently Manana Si began doing business with the Plaintiff in this case, Smith Drug Company ("Smith Drugs"), and granted them a junior security interest in its inventory. In June of 1996, Manana Si filed Chapter 7 bankruptcy. The Trustee, reviewing the value of the inventory in relation to the first and second liens against it, determined that there was no value to the estate to be derived by selling the inventory and abandoned that inventory from the Chapter 7 estate.

Prior to 1996 the Debtor formed another company known as Luke & Luke, Inc., which specialized in the sale of durable medical equipment and operated that company in a store adjacent to The Medicine Shoppe. When the inventory of The Medicine Shoppe was abandoned by the Chapter 7 Trustee, the Debtor physically moved the assets of Luke & Luke, Inc. ("Luke & Luke"), from its original location into the retail location formerly occupied by Manana Si and began operating both the pharmacy and durable medical equipment business, in the name of Luke & Luke, from the original Manana Si location.

The effect of the physical change in location was that the Manana Si inventory which had been abandoned by the Trustee and on which there was a first lien to the Bank of Fitzgerald and a second lien to Smith Drug became commingled with the inventory of Luke & Luke without notice

to Smith Drug. Luke & Luke then began to purchase prescription drugs and other inventory from Amerisource Corporation ("Amerisource") and granted to Amerisource a second lien position behind that of the Bank of Fitzgerald which was succeeded as the first lienholder by First Georgia Bank. Smith Drug never obtained any security interest in the Luke & Luke inventory and the Amerisource security interest attached to all the Luke & Luke inventory.

Debtor filed her personal Chapter 7 case on December 4, 1998, and failed to reveal any interest in Luke & Luke, Inc. In December 1998, Luke & Luke itself filed a Chapter 7 bankruptcy. Immediately before filing Mrs. Luke sold the inventory, equipment, and other assets of that business to CVS Pharmacy. The $60,000.00 proceeds were then the subject of litigation between the Trustee, First Georgia Bank, Amerisource, Smith Drug, and Luke & Luke, who ended up dividing the $60,000.00 proceeds. As it turned out, First Georgia Bank had failed to properly perfect its security interest in the inventory and received no proceeds. The proceeds were divided in a way that recognized Amerisource's first lien position with Amerisource receiving approximately $36,000.00 in proceeds, the Trustee receiving approximately $6,000.00 and Smith Drug approximately $18,000.00 of the total, based on its contentions that the Luke & Luke inventory in which it had no interest still contained residual inventory of Manana Si over which its lien had first priority.

The issues to be resolved in this case are twofold. First, did the Debtor commit a willful and malicious injury in converting the collateral of Manana Si pledged to Smith Drug Company when she physically merged it with the assets of Luke & Luke and then caused Luke & Luke to pledge its inventory which then included the Manana Si inventory to Amerisource in such a way that Smith Drug Company's lien position was impaired? Second, did the Debtor, in depositing $110,000 into the corporate account of Manana Si after it had filed Chapter 7 use the funds in such as way that the debt is non-dischargeable debt pursuant to § 523(a)(4)?

## CONCLUSIONS OF LAW

### 523(a)(6)

■ I conclude that although the Debtor physically merged the inventory of Luke & Luke with that of Manana Si, failed to give notice to Smith Drug Company of that merger, and then pledged to assets of Luke & Luke to Amerisource, no conversion of the assets pledged to Smith Drug Company occurred.

■ 11 U.S.C. § 523(a)(6) provides an exception from discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity" which can include conversion of property. *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916). In an action for conversion, a prima facie case is shown by establishing proof of title to the property in the plaintiff, right of possession in the plaintiff, possession in the defendant, demand for possession, refusal to surrender, and the value of the property. *City of College Park v. Sheraton Savannah Corporation*, 235 Ga.App. 561, 564, 509 S.E.2d 371 (Ga.Ct.App.1998). *See Hyde v. Gill*, 236 Ga.App. 729, 733, 513 S.E.2d 278 (Ga. Ct.App.1999) (conversion involves unauthorized assumption and exercise of the right of ownership over personal property belonging to another); *In re LaGrone*, 230 B.R. 900 (Bankr.S.D.Ga.1999). (any act of dominion wrongfully asserted over another's property in denial or inconsistent with its rights).

In instances as in the case at bar where a security interest in goods is present, O.C.G.A. § 11–9–315 must be considered. That code section states:

(1) If a security interest in goods was perfected and subsequently the goods or a part thereof have become part of a product or mass, the security interest continues in the product or mass if;

(a) The goods are so manufactured, processed, assembled, or commingled that

their identity is lost in the product or mass; or

(b) A financing statement covering the original goods also covers the product into which the goods have been manufactured, processed, or assembled.

(2) When under subsection (1) of this Code section more than one security interest attaches to the product or mass, they rank equally according to the ratio that the cost of the goods to which each interest originally attached bears to the cost of the total product or mass.

Section 11–9–315 also applies to situations in which inventory is commingled. *Sowards v. State*, 137 Ga.App. 423, 224 S.E.2d 85 (Ga.Ct.App.1976).

When the Debtor merged the inventory of Luke and Luke with Manana Si, Smith Drug Company's security interest in the inventory of Luke and Luke continued in the commingled inventory. As such, Smith Drug Company retained its right to possession of the inventory, or proceeds from the inventory, upon which it had a security interest, precluding the claim of conversion. *See In re Faller*, 46 B.R. 93 (Bankr.N.D.Ohio 1985) (holding that conversion did not occur upon the transfer of inventory from one commonly held corporation to another as the security interest in the inventory and the proceeds was not extinguished). Indeed this continuing interest of Smith Drugs was the ostensible reason Smith received $18,000.00 of the proceeds of the Luke & Luke inventory sale.

### 523(a)(4)

▉ The Debtor, did, however, in her actions after the filing of the Chapter 7 petition, specifically in the deposit of approximately $110,000.00 into the corporate account of Manana Si, Inc., which was either used later for Debtor's own personal benefit or transferred for the benefit of Luke & Luke, breach a fiduciary duty, which will bar some amount from discharge in this case. Section 523(a)(4) provides an exception to discharge for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Georgia law establishes that managing officers of a corporation are charged with the duty of conserving and managing the remaining assets in trust for the creditors when the corporation becomes insolvent. *Ware v. Rankin*, 97 Ga.App. 837, 838, 104 S.E.2d 555, 558 (Ga.Ct.App.1958). "When a corporation becomes insolvent its directors are bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." *Hickman v. Hyzer*, 261 Ga. 38, 40, 401 S.E.2d 738, 740 (Ga.1991) (quoting *Ware v. Rankin*, 97 Ga.App. at 838, 104 S.E.2d 555). *See Atlas Tack Co. v. Exchange Bank of Macon*, 111 Ga. 703, 36 S.E. 939 (Ga.1900) (holding that directors of an insolvent corporation are trustees of corporate funds); *Tatum v. Leigh*, 136 Ga. 791, 72 S.E. 236 (Ga.1911) (holding that indebtedness created by misappropriation of funds by the director of an insolvent corporation is not dischargeable). *Cf. In re Cross*, 666 F.2d 873 (5th Cir.1982) (holding that § 17(a)(4) requires the claimant to be the beneficiary of a preexisting fiduciary relationship, but finding that factually no such relationship existed, therefore finding discharge of debts appropriate).

▉ In *Quaif v. Johnson*, 4 F.3d 950 (11th Cir.1993), the Eleventh Circuit discussed the concept of defalcation by fiduciary. There the Court was confronted by the mishandling of funds by an insurance agent who was subject to the provisions of the Georgia statute which provides, "all funds representing premiums received or return premiums due the insured by any agent, broker, or solicitor, shall be accounted for in his fiduciary capacity, shall not be commingled with his personal funds, and shall be promptly accounted for and paid to the insurer, insured, or agent as entitled to such funds." *Quaif*, 4 F.3d at 953. In that case the bankruptcy court concluded that the statutory language created a fiduciary duty for the purposes of Section 523(a)(4). The Eleventh Circuit reviewed that finding in light of Supreme

Court precedent which has consistently held the term "fiduciary" is not to be construed expansively, but instead is intended to refer to technical trusts. *Citing Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The Eleventh Circuit outlined the traditional view of trusts as falling into two categories. The first consists of voluntary trusts created by contract and known as express trusts. The second consists of trusts created by operation of law such as constructive or resulting trusts arising to provide a remedy for some dereliction of duty. According to *Davis* and other authority, a trust relationship must exist prior to the act which creates the debt in order to fall within the statutory exception of 523(a)(4) to apply. *Quaif,* 4 F.3d at 953. *See In re Angelle,* 610 F.2d 1335 (5th Cir.1980) (citing *Davis v. Aetna Acceptance Co.* as authority for the requirement that the trust relationship must be pre-existing). As a result, constructive trusts do not fall within the exception to discharge "because the act which created the debt simultaneously creates the trust relationship." *Quaif,* 4 F.3d at 953. The Eleventh Circuit goes on as follows:

> The difficulty arose with the advent of statutorily created 'trusts.' Statutes such as O.C.G.A. § 33–23–79 create fiduciary duties that are dependent upon the relationship between the parties but fit into neither of the traditional categories. They are not agreed upon by the parties nor are they created ex post as a remedial measure to right a wrong. The lower courts have struggled with reconciling this new type of fiduciary duty with the traditional categories, but have failed to produce uniform results. *See In re Turner,* 134 B.R. at 653–56.

*Id.* at 953–54. The Court went on to state that the Eleventh Circuit has never expressly addressed this problem before, referring to *In re Cross, supra,* which found that the debt was dischargeable because there was no pre-existing contractual or statutory duty owed in that case. However, in *Cross* there was no statute creating any fiduciary duty as there was in *Quaif.*

The Eleventh Circuit concluded that because the statute required agents to promptly account for and remit payments of funds to the insurer and forbade them from commingling funds, the statute created a fiduciary duty which existed prior to the act of defalcation. It thus satisfied the requirement that the fiduciary relationship must be an express fiduciary relationship and must pre-date the act which creates the debt. *Quaif,* 4 F.3d at 954. Relying on Judge Hand's opinion in *Central Hanover Bank* that while an innocent mistake by a fiduciary might be dischargeable, a defalcation need not rise to the level of fraud, embezzlement, or misappropriation, the court concluded that "the failure to remit premiums to Ambassador constituted a defalcation within the meaning of 523(a)(4)." *Quaif,* 4 F.3d at 955 (*citing Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 512 (2nd Cir.1937)).

As applied to the facts in this case I find the *Quaif* decision to be controlling. The only meaningful distinction is that the fiduciary obligation created here is one imposed by common law rather than statute. Nevertheless, it is an express fiduciary duty imposed by law which predates the act giving rise to the indebtedness at issue. Thus the transfer of funds from the account of Manana Si where the defendant had a fiduciary duty to manage those funds for the benefit of creditors of that corporation to the account of Luke and Luke constitutes a prima facie case of defalcation under the Bankruptcy Code.

██ That duty, as enunciated in *Ware,* is that after insolvency managing officers are "charged with the duty of conserving and managing the remaining assets *in trust* for creditors." What they may not do is "use their position for the purpose of preferring themselves over any creditor." *Ware v. Rankin,* 97 Ga.App. at 838, 839, 104 S.E.2d 555 (emphasis added). The may, however, prefer one creditor over another even if there is an incidental benefit to the officer. *Id.* at 838, 104 S.E.2d 555. A corporation will be deemed insolvent if "after a voluntary deed or con-

veyance, the property left or retained by the debtor is not ample to pay his existing debts." *Randall & Neder Lumber Company, Inc. v. Bowen–Rogers Hardware Co., Inc.*, 202 Ga.App. 497, 499, 414 S.E.2d 718, 720 (Ga.App.1992). At the time of the transfer in question, a Chapter 7 petition had been filed and Manana Si was in fact insolvent. I therefore find that from the moment of filing debtor had a fiduciary duty to manage the assets of the insolvent corporation, Manana Si, for the benefit of its creditors and avoid misuse of those assets. With the deposit of the $110,000.00 into the account of Manana Si, and the later use of those funds either for personal gain or for the benefit of a sister corporation, Luke & Luke, the debtor breached this duty. Debtor's actions in depositing the $110,000.00 in the Manana Si account and later using it for purposes other than satisfying creditors of Manana Si constitute a defalcation, excepting the portion used for purposes other that satisfying creditors from discharge.

Beth Pharr Luke acknowledged the deposit of approximately $110,000.00 into the account of Manana Si, an undisclosed amount of which was paid to or for the benefit of the Bank of Fitzgerald, one of Manana Si's creditors. However, a significant portion of the $110,000.00 also went to the Debtor, or to Luke and Luke, a company owned and operated for the benefit of Debtor. This money was then used by Luke and Luke for purchases of inventory for and other purchases not related to the creditors of Mariana Si. Plaintiff proved the initial transfer and that some of the funds were not used for the benefit of creditors. Debtor never established how much of the $110,000.00 went for the benefit of creditors. However, testimony in the deposition of Thomas T. Dampier, Chief Executive Officer of the Bank of Fitzgerald, shows that some payments were made to the bank of Fitzgerald, a creditor, after Manana Si filed for bankruptcy in the two years before Luke and Luke itself filed for Bankruptcy. *See* Deposition of Thomas T. Dampier, pp. 20–30; Pre-trial Stipulation, Stipulated Facts # 29–33.

However, the exact amount of these payments was not proven at trial. In order to determine the amount excepted from discharge, I ORDER that the evidence be reopened for this limited purpose. The parties are required, within thirty (30) days of this Order, to provide this Court with a stipulation of the amount of payments made to the Bank of Fitzgerald (or other Manana Si creditors) from the accounts receivable of Manana Si. This portion of the $110,000.00 will be discharged with the remainder, which was used for personal and business gain of Debtor Beth Pharr Luke, excepted from discharge.

If the parties are unable to stipulate, a further evidentiary hearing will be scheduled. Pending the deadline for filing a stipulation, the parties are FURTHER ORDERED to appear at a status conference to be held on

Thursday, July 13, 2000
at 11:00 o'clock a.m.
3rd Floor Courtroom
United States Courthouse
Brunswick, Georgia