**In re Bradley Eugene LOWERY, Jr. and Linda Kay Lowery, Debtors.**

**Jamal Lewis, Plaintiff,**

v.

**Bradley Eugene Lowery, Jr., Defendant.**

**Bankruptcy No. 09–86901–WLH.
Adversary No. 09–6771–WLH.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 16, 2010.

S. Keith Eady, Keith Eady & Associates, LLC, Atlanta, GA, for Debtors.

Hal J. Leitman, Vania S. Allen, Macey, Wilensky, Kessler & Hennings, LLC, Atlanta, GA, for Plaintiff.

Richard K. Valldejuli, Jr., Valldejuli & Associates, LLC, Atlanta, GA, for Defendant.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

WENDY L. HAGENAU, Bankruptcy Judge.

This adversary proceeding is before the Court on Plaintiff Jamal Lewis' Motion for Summary Judgment (the "Motion") (Docket No. 21) and Debtor Defendant Bradley Lowery's Response in Opposition thereto (Docket No. 28). Plaintiff's Motion seeks judgment on a Complaint to Determine the Dischargeability of Debt owed to Plaintiff by the Defendant pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6) filed on December 30, 2009. The Complaint and Motion assert a prior Superior Court order collaterally estops re-litigation of the issues. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court has jurisdiction over it pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

The Court has considered the pleadings and supporting documents and briefs submitted by the parties. For the reasons stated below, the Court concludes that the Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

### FINDINGS OF FACT

Plaintiff Jamal Lewis ("Lewis") and Defendant Bradley Lowery ("Lowery") entered into a Cost of Work Plus a Fee Contract (the "Contract") for construction of a multilevel residence located at 568 Trabert Avenue, Atlanta, Georgia 30309 (the "Property") in July, 2006. (Pl.'s Statement of Undisputed Facts ¶ 1).[1] The

---

1. In Lowery's Response to Plaintiff's Statement of Undisputed Facts (Docket No. 29), Lowery admits the items set forth in Plaintiff's

Statement of Undisputed Facts ¶ 1 and 3 and admits the statements in ¶ 2, 4–15 were recit-

Contract stated the total cost for construction of the Property would be $2,400,000.00 and was entered into by Lewis, as owner, and Lowery, as President of Lowery & Associates, Inc. *Id.* at ¶ 2. On September 9, 2007, Lewis entered into a Construction Loan Agreement and obtained a construction loan from Taylor, Bean & Whitaker Mortgage Corp. in the principal amount of $2,400,000.00. *Id.* at ¶ 3.

During the first six (6) months of construction, Lowery & Associates, Inc. received $681,000.00 in loan proceeds. (Pl.'s Statement of Undisputed Facts ¶ 4). Lowery & Associates, Inc. failed to provide weekly or monthly reports to Lewis showing the labor and materials furnished and ignored numerous telephone calls made by Lewis throughout the duration of the construction. *Id.* at ¶ 10.

After Lowery failed to respond, Lewis retained a construction expert, Mark Wilcox ("Mr. Wilcox"), to evaluate and inspect the property and to determine costs expended for the project including materials and labor as well as the percentage of completion. *Id.* at ¶ 11. Mr. Wilcox took numerous photographs of the Property, examined the condition of the interior and exterior walls and foundation, and made a determination as to the percentage of the work completed, cost to repair and expenses still owed to subcontractors who had performed work or who had provided material to the project. *Id.* at ¶ 12. Mr. Wilcox discovered rusted beams, water intrusion, standing water, stained walls, algae, mold, rust stained interior and exterior walls, exposed beams, incomplete stucco work, exposed foundation and an incomplete roof. *Id.* at ¶ 13. Mr. Wilcox testified that, based upon his experience, knowledge of costs and materials and inspection of the residence, the construction

project was between 45% and 48% complete, not 80% complete as Lowery alleged. *Id.* at ¶ 14. As a result of the construction disputes, Lewis sued Lowery and Lowery & Associates, Inc. in the Superior Court of Fulton County. *Id.* at ¶ 15.[2]

Lewis' complaint in the Fulton County Superior Court asserted claims, against Lowery and Lowery & Associates, Inc. for breach of construction contract, fraud and deceit, and conversion. (Def.'s Brief in Supp. of Opp'n to Pl.'s Mot. for Summ. J., Ex. A, Superior Court Compl.). During the discovery phase of the Fulton County Superior Court action, the Fulton County Superior Court entered an order striking Lowery's and Lowery & Associates, Inc.'s answers for failing to comply with a previous Fulton County Superior Court discovery order. (Def.'s Brief in Supp. of Opp'n to Pl.'s Mot. for Summ. J., Ex. B, Superior Court Sanction Order.). Thereafter, the Fulton County Superior Court held a hearing to determine damages. (Compl., Ex. 3, Superior Court Order). The resulting Fulton County Superior Court order is the basis for Lewis' claim of nondischargeability in the present action.

The Superior Court of Fulton County Order ("Superior Court Order") entered on July 22, 2009, found in favor of Lewis and based its findings of fact on the testimony of Lewis, Mr. Wilcox and attorney William J. McKenney (as to reasonable attorney's fees) and admission of exhibits into evidence. (Compl., Ex. 3, Superior Court Order). The Superior Court Order concluded that Lowery and Lowery & Associates, Inc. breached the Contract and committed fraud and conversion. The Superior Court Order and subsequent judgment awarded Lewis $1,314,694 in actual

---

ed in the Superior Court of Fulton County Order.

**2.** The Superior Court action co-defendants included Taylor, Bean & Whitaker Mortgage Corp. and Leslie Riales.

damages, $304,000 in consequential damages, $4,010 in attorney's fees and $250,000 in punitive damages. (Compl., Ex. 3, Superior Court Order). Lowery filed his petition under Chapter 7 of the United States Bankruptcy Code on October 9, 2009.

### CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Fed. R. Civ. Proc. 56(c) [3]. The party moving for summary judgment has the burden of demonstrating that no dispute exists as to any material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993). Once this burden is met, the non-moving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ Pro. 56(e). Rather, the non-moving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Id.* Lastly, when reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the non-moving party and all reasonable doubts and inferences should be resolved in favor of the non-moving party. *Hairston*, 9 F.3d at 918.

■ The issue raised in this adversary proceeding is whether Lowery's debt to Lewis is excepted from discharge. Courts narrowly construe exceptions to discharge in favor of the debtor in order to give effect to the fresh start policy of the Bankruptcy Code. *Hope v. Walker (In re*

*Walker)*, 48 F.3d 1161, 1164–65 (11th Cir. 1995). The creditor bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In the instant action, Lewis contends that his entire claim against Lowery, evidenced by the Superior Court Order, satisfies the exceptions to discharge under § 523(a)(2)(A), (a)(4), and (a)(6). Lewis argues that applying the doctrine of collateral estoppel to the Superior Court Order establishes the elements of section 523.

### Collateral Estoppel

■ The doctrine of collateral estoppel seeks to prevent the re-litigation of issues previously contested and determined by a valid and final judgment in another court. *Newton v. Lemmons (In re Lemmons)*, 2005 WL 6487216 (Bankr. N.D.Ga.2005). The doctrine of collateral estoppel applies to nondischargeability proceedings. *(In re Lemmons)*, 2005 WL 6487216 (citing *Grogan*, 498 U.S. at 284 n. 11, 111 S.Ct. 654). When reviewing a Superior Court judgment under the doctrine of collateral estoppel, a federal court must accord the judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered. *In re Lemmons*, 2005 WL 6487216 (citations omitted).

■ This Court must, therefore, turn to Georgia law to determine the preclusive effect of the Superior Court Order against Lowery. *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 501 (Bankr.S.D.Ga. 2009). "While collateral estoppel may foreclose relitigation of issues decided in prior judicial proceedings, the ultimate issue of dischargeability is a legal question over which the bankruptcy court has exclu-

---

**3.** Fed.R.Civ.P. 56(c) is made applicable in adversary proceedings by Fed. R. Bankr.P. 7056(c).

sive jurisdiction." *Id.* (citations omitted). Under Georgia law, a party may only assert the doctrine of collateral estoppel when the following elements have been satisfied: (1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question. *In re Lemmons*, 2005 WL 6487216.

*Identity of Parties*

■■■ As to identity of the parties, Lowery concedes he was a party in the Fulton County Superior Court action and is a party in the instant action. However, Lowery notes the complaint in the Fulton County Superior Court action named other co-defendants not being pursued in the instant matter. Courts have concluded under the rules of issue preclusion, "the fact that the parties are not precisely identical is not necessarily fatal." *See Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). Despite Lowery's correct assertion that the instant action only involves Lowery individually while the Superior Court action included other parties, the final order and judgment in the Superior Court action named only Lowery individually and Lowery & Associates, Inc. Moreover, the Superior Court Order included no findings as to the other defendants and their actions did not play any role in the ultimate findings against Lowery. Finally, only Lowery is a debtor and it is only as to him that dischargeability has been and can be raised. The identity of parties prong of collateral estoppel is, therefore, satisfied.

*Essentiality and Full and Fair Opportunity to Litigate*

■■■ Lowery did not address the essentiality prong of collateral estoppel but clearly the Superior Court Order was essential to the Superior Court action since it resulted in a final judgment. Lowery also did not address the full and fairness prong of collateral estoppel in his brief but did raise it as a contested fact. The full and fair opportunity to litigate the issues in state court is rooted in due process concerns. *Microfinancial, Inc. v. Delpiano (In re Delpiano),* 2005 WL 6488906 (Bankr.N.D.Ga.2005). In the instant matter, Lowery has offered no evidence to the Court supporting an argument of failure of due process, which would preclude satisfaction of the full and fair opportunity prong by this Court. To the contrary, the documents submitted by Lowery indicate he had every opportunity to litigate the issue of liability on which a default was granted. The Superior Court entered an order on April 29, 2009 with proposed sanctions for failure to respond to discovery and giving Lowery ten more days to respond before imposing sanctions. Only after Lowery failed to respond within this extended time was his answer stricken. (Def.'s Brief in Supp. of Opp'n to Pl.'s Mot. for Summ. J., Ex. B). As the court in *Matter of Graham,* 191 B.R. 489 (Bankr. N.D.Ga.1996) stated, "Other than his own willfulness and obstructionism, nothing prevented him from arguing his case to completion." *Id.* at 496.

Moreover, the Notice of Hearing for the Superior Court's hearing on damages shows service upon Lowery and Lowery & Associates, Inc. (Def.'s Brief in Supp. of Opp'n to Pl.'s Mot. for Summ. J., Ex. D, Notice of Hearing). The Court concludes that Lowery and Lowery & Associates, Inc. were provided notice and opportunity to litigate liability and to appear and present evidence to refute damages at a hearing to determine the amount of damages. *See contra Sterling Factors, Inc. v. Whelan,* 245 B.R. 698, 710 (N.D.Ga.2000) (affirming in part a bankruptcy court decision that held defendants were denied the full and fair opportunity to litigate their claims

in state court when the state court allowed the plaintiff to simply submit a "short affidavit" stating it was entitled to damages and attorney's fees; defendants were neither served with a copy of the affidavit nor given the opportunity to respond; and the state court entered an award of damages without noticing or holding a hearing on the foregoing). Thus, the full and fair opportunity to litigate prong has been satisfied.

*Actually Litigated*

 The next prong of collateral estoppel analysis is whether the matter has been actually litigated. "Georgia case law does not disclose any analytical framework for determining whether a matter was actually litigated. However, 'as a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been "actually litigated." '" *Lusk v. Williams (In re Williams)*, 282 B.R. 267, 272 (Bankr.N.D.Ga.2002) (citing 18 James WM. Moore, et al., *Moore's Federal Practice* ¶ 132.03[2][c] (3d. ed. 1999)). Georgia law recognizes a default judgment as a judgment on the merits entitled to preclusive effect. *McKelvey v. Murray (In re Murray)*, 2009 WL 6527593 (Bankr. N.D.Ga.2009) (citing *League v. Graham*, 191 B.R. 489 (Bankr.N.D.Ga.1996)). In addition to the default resulting from the stricken answer, the court held a hearing and considered testimony and documentary evidence before entering the Superior Court Order. This Court concludes the matters determined in the Superior Court Order were actually litigated.

*Identity of Issues*

 Lowery does not dispute the preclusive effect of the findings of fact and

conclusions of law contained in the Superior Court Order and judgment in calculating damages. Lowery instead asserts that the facts set forth in the Superior Court Order "Findings of Fact" based on the purported evidence presented do not match the issues raised in the Complaint or the conclusions of law in the Superior Court Order. (Def.'s Brief in Supp. of Opp'n to Pl.'s Mot. for Summ. J. at 11). The Court must apply collateral estoppel separately to the liability and damages portion of an order and may give preclusive effect to either, both or neither. *See Sterling Factors, Inc.* 245 B.R. at 708.

 As the court in *Sterling Factors, Inc.* summarized, the distinction between liability and damages is significant. A typical civil proceeding consists of two elements, liability and damages, while an adversary proceeding respecting dischargeability consists of three elements, liability, damages and dischargeability. *Sterling Factors, Inc.* 245 B.R. at 708. Although a non-bankruptcy court can determine liability and damages, a bankruptcy court must determine dischargeability. *Id.* A bankruptcy court can, however, adopt findings of a non-bankruptcy court when they have been fully litigated. *Id.* A bankruptcy court can, therefore, apply collateral estoppel on the issue of liability or the issue of liability and damages to the extent those issues were litigated in the prior action, but the bankruptcy court must still determine on the basis of those proven facts whether those acts come within the dischargeability sections of the Bankruptcy Code. *Id.* In addressing each potential ground for nondischargeability below, the Court will analyze the Superior Court's findings and conclusions as to liability and damages.[4]

4. Given the inability to match up allegations set forth in the underlying Superior Court complaint with the findings and damages awarded in the Superior Court Order, this Court did not rely on facts alleged in the underlying Fulton County Superior Court

### a. *11 U.S.C. § 523(a)(2)(A)*

▮ Plaintiff asserts first that its claim is nondischargeable because it arises from a false representation. To prove a debt was incurred through false representation under § 523(a)(2)(A), a creditor must show by a preponderance of the evidence: (1) that the debtor made a false representation with the intent to deceive the creditor; (2) that the creditor relied on the representation; (3) that the reliance was justified; and (4) that the creditor sustained a loss as a result of the representation. *In re Camacho,* 411 B.R. at 505 (citing *In re Bilzerian,* 100 F.3d 886, 892 (11th Cir. 1996); *In re St. Laurent,* 991 F.2d 672, 676 (11th Cir.1993)).

▮ Similarly, the tort of fraud under Georgia law requires: (1) a false representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation; and (5) damages suffered by the plaintiff as a result. *In re Camacho,* 411 B.R. at 505 (citing *Crawford v. Williams,* 258 Ga. 806, 806, 375 S.E.2d 223 (1989); *Lister v. Scriver,* 216 Ga.App. 741, 745, 456 S.E.2d 83 (1995); *Lykins v. Nationwide Mut. Ins. Co.,* 214 Ga.App. 577, 579, 448 S.E.2d 716 (1994)). The Court concludes the requirements for establishing "a fraud claim under Georgia law [are] sufficiently identical to the elements require[d] for a showing of fraud pursuant to 11 U.S.C. § 523(a)(2)(A)," to find an identity of issues. *In re Camacho,* 411 B.R. at 506 (citing *In re Whelan,* 245 B.R. at 705–06; *In re Hooks,* 238 B.R. 880, 888 (Bankr. S.D.Ga.1999)).

### i. *Misrepresentation with an Intent to Deceive*

▮ Turning to the first element required under § 523(a)(2)(A), false representation with an intent to deceive, Lewis argues the following findings of fact and conclusions of law in the Superior Court Order are sufficient for application of collateral estoppel as to liability:

> [d]efendant Brad Lowery intentionally misled the Plaintiff by representing that weekly or monthly project reports would be sent to the Plaintiff before draws were requested;

> [t]hese representations were made with intent to induce the Plaintiff to enter into the Construction Agreement, the representations were known by the Defendant to be false, the Plaintiff reasonably relied upon these representations and has been damaged for which punitive damages are warranted;

> [t]he Defendants having misrepresented material facts induced the Plaintiff to enter the Construction Contract, knowing that weekly or monthly reports would never be sent to the Plaintiff before draws were requested from the mortgage company; and

> [t]he actions and conduct of the Defendants constitute fraud and conversion for which punitive damages shall be awarded.

(Compl., Ex. 3, Superior Court Order). "[A] statement of intent to perform an act in the future will not generally form the basis of a false representation that is actionable under section 523(a)(2)(A)[,] unless the creditor can establish that the debtor lacked the subjective intent to perform the act at the time the statement was made." *Duncan v. Bucciarelli (In re Buc-*

---

complaint but not found in the Superior Court Order for purposes of collateral estoppel. Rather, the Court only relied upon the

findings of fact and conclusions of law set forth in the Superior Court Order.

*ciarelli)*, 429 B.R. 372, 375 (Bankr.N.D.Ga. 2010). Here, however, the Superior Court Order concluded that Lewis was induced into entering into the Contract by Lowery's intentional representations that weekly or monthly reports would be sent to Lewis before draws were requested and Lowery knew those representations to be false at the time he made them. Thus, the element of intentional misrepresentation has been established under the doctrine of collateral estoppel.

### ii. *Justifiable Reliance*

 The Court also concludes the remaining elements of § 523(a)(2)(A) were submitted to the trier of fact for final determination and were determined adverse to the Defendant. The Superior Court Order stated in ¶ 26 of the Findings of Fact that "the Plaintiff reasonably relied upon these representations and has been damaged for which punitive damages are warranted." (Compl., Ex. 3, Superior Court Order). As bankruptcy courts have stated, the justifiable reliance required for 11 U.S.C. § 523(a)(2)(A) is not as exacting as the requirement of reasonable reliance required for state law fraud. *In re Bucciarelli*, 429 B.R. at 376. Justifiable reliance requires a subjective test to determine whether the creditor justifiably relied on the debtor's false statements while reasonable reliance requires an objective test as to what a reasonable man would do in that situation. *Id.* In the instant matter, the Superior Court concluded that Lewis reasonably relied, satisfying the identity of issue prong for reliance.

### iii. *Loss*

The Superior Court Order found that "during the initial six months period, [Lowery & Associates, Inc.] received $681,000.00 in loan proceeds for labor and material purported to have been installed in the residence." The Superior Court Order states further, "[d]uring this time period, Defendant Lowery & Associates, Inc. did not provide weekly or monthly reports to Plaintiff Lewis showing the labor and materials furnished." The Superior Court Order also finds the construction was not as complete as alleged. The Superior Court holds that the scheme by Lowery and his company allowed Lowery and his company to obtain over $2,000,000 in draws "without alerting the Plaintiff that draws were not supported by work or materials actually installed in the residence." The Court finds the accumulation of these findings and holdings sufficient to preclude further litigation on whether there was a loss.

 Nevertheless, as stated above, collateral estoppel as to liability is not the same as collateral estoppel as to the damages, and the Court must separately analyze the damages awarded to the Plaintiff. The Superior Court Order awarded damages on several grounds: contract, conversion and fraud. The Superior Court also awarded multiple elements of damages: actual, consequential, punitive and attorney's fees. The only damages clearly identified by the Superior Court Order, as caused by fraud, were punitive damages: "[t]hese representations were made with intent to induce the Plaintiff to enter into the Construction Agreement, the representations were known by the Defendant to be false, the Plaintiff reasonably relied upon these representations and has been damaged *for which punitive damages are warranted.*" (Compl., Ex. 3, Superior Court Order) (emphasis added). The basis for the remaining damages (whether fraudulent misrepresentations, contract damages or otherwise) were not identified in the Superior Court Order (with the exception of conversion damages discussed below):

Plaintiff suffered a loss of $1,074,694.00 as a result of draws not applied to the project;

[f]urthermore, $240,000.00 in outstanding expenses remain unpaid to vendors and subcontractors;

[a]dditional foreseeable consequential damages including labor and materials necessary to repair the existing residence which was caused when the Defendants ceased construction are approximately $304,000; and

[a]ttorney's fees which were apportioned between the three (3) Defendants in the amount of $4,010.00 were reasonable and necessary in this matter.

(Compl., Ex. 3, Superior Court Order). The issue for this Court then becomes determining which damages relate to the fraud and which damages are a result of some other legal claim. Only those damages relating to the fraud found by the Superior Court may be given preclusive effect in this proceeding since it is only a claim arising from fraud which is nondischargeable. Since the only fraud given preclusive effect relates to representing that reports would be provided to Lewis, the Court must review the Superior Court Order for damages arising from this act. Any doubts as to the allocation of damages are to be resolved in favor of the non-moving party. *See Keever v. Gallagher (In re Gallagher)*, 388 B.R. 694 (W.D.N.C. 2008).

■ Recognizing that the Superior Court Order clearly sets forth an award of $250,000 for fraud in the inducement, the $250,000 award is, therefore, nondischargeable. This Court understands that a court must award actual damages in order to also make an award of punitive damages. *See Weprin v. Peterson*, 736 F.Supp. 1131, 1132 (N.D.Ga.1988) (stating that Georgia law defines punitive damages as "additional damages," which presupposes the award of initial damages); *see also Daiss v. Woodbury*, 163 Ga.App. 88, 88, 293 S.E.2d 876 (1982) (stating "punitive damages are not recoverable when there is

no entitlement to compensatory ('actual') damages"). However, this Court is unable to identify which additional items of the damage award are based on Lowery's fraud in representing reports would be made. Summary judgment as to damages other than the $250,000 punitive damage award is denied.

b. *11 U.S.C. § 523(a)(4)*

■ Lewis also contends collateral estoppel is applicable to establish nondischargeability under § 523(a)(4). Under subsection (a)(4), a debt for "fraud or defalcation while acting in a fiduciary capacity" is nondischargeable. 11 U.S.C. § 524(a)(4). "Section 523(a)(4) requires that the debtor, acting as a fiduciary in accordance with an express or technical trust that existed prior to the wrongful act, committed an act of fraud or defalcation." *In re Lemmons*, 2005 WL 6487216 (citing *Eavenson v. Ramey (In re Eavenson)*, 243 B.R. 160, 164 (N.D.Ga.1999)). A technical trust has been defined by the Eleventh Circuit as "an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation." *In re Ferland*, 2010 WL 2600588 (Bankr.M.D.Ga.2010) (citing *Quaif v. Johnson*, 4 F.3d 950, 953–54 (11th Cir.1993)). "Mere friendship does not meet this standard, nor does an ordinary business relationship." *In re Ferland*, 2010 WL 2600588 (citing *Tarpon Point, LLC v. Wheelus (In re Wheelus)*, 2008 WL 372470 (Bankr.M.D.Ga.2008)).

■ The underlying Superior Court Order contains no finding that Lowery was acting, at any time, as a fiduciary. Thus, the doctrine of collateral estoppel does not apply to this subsection of section 523. Lewis relies upon *Smith Drug Co. v. Pharr–Luke (In re Pharr–Luke)*, 259 B.R. 426, 430 (Bankr.S.D.Ga.2000), for the proposition that under Georgia law, managing

officers of a corporation are charged with the duty of conserving and managing the remaining assets in trust for the creditors when the corporation becomes insolvent and "[w]hen a corporation becomes insolvent its directors are bound to manage the remaining assets for the benefit[ ] of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." *In re Pharr–Luke*, 259 B.R. at 430. It is that common law duty that Lewis argues rises to the level of a fiduciary duty.[5]

■■■■■ For purposes of § 523(a)(4), "fiduciary" is narrowly construed and "[o]nly a subset of fiduciary obligations [are] encompassed in the word 'fiduciary' ". *See In re Wheelus*, 2008 WL 372470 (citing *Hosey v. Hosey (In re Hosey)*, 355 B.R. 311, 322 (Bankr.N.D.Ala.2006)); *see also* 4 *Collier on Bankruptcy* ¶ 523.10[1][d], p. 523–73. Additionally, "[a] technical trust requires property entrusted to the debtor" and "the statute must impose trust-like duties, such as segregation of the res." *In re Wheelus*, 2008 WL 372470; *see also Quaif*, 4 F.3d at 953 (finding a fiduciary capacity based upon a state law statute requiring insurance agents to segregate premiums held on behalf of customers).

In *In re Pharr–Luke* the court analyzed whether a debtor committed fraud while acting in a fiduciary capacity under § 523(a)(4) when the debtor, acting as corporate officer, used corporate funds for personal use at a time when the corporation was insolvent. *In re Pharr–Luke*, 259 B.R. at 426–29. The *Pharr–Luke* court concluded the debtor breached a fiduciary duty when assets of an insolvent company were not managed for the benefit of creditors. *Id.* at 432.

Lewis' reliance on *Pharr–Luke* is misplaced, however. In *Pharr–Luke*, the acts in question by the individual debtor occurred after the filing of a bankruptcy petition by the company at issue, of which she was an officer. The insolvency of the company at issue was not contested. In the instant action, however, the misrepresentations and fraud in the inducement occurred pre-petition. Lewis' only evidence of insolvency is Debtor's schedules stating the value of his interest in the company as of the date of his bankruptcy petition is $0. The misrepresentations and fraud in the inducement found by the Superior Court occurred in July 2006, over three (3) years prior to Debtor's petition date and Lewis has offered no proof of insolvency when the foregoing occurred. Therefore, even if Lewis is correct that Lowery owed a fiduciary duty to Lewis when Lowery & Associates, Inc. became insolvent[6], there is no evidence Lowery & Associates, Inc. was insolvent when the contract was entered into in 2006, when the fraud found by the Superior Court occurred. The Court declines to grant summary judgment as to § 523(a)(4) for debt arising from "fraud or defalcation while acting in a fiduciary capacity".

### c. 11 U.S.C. § 523(a)(6)

Lastly, Lewis argues this Court should apply the doctrine of collateral estoppel to his claim under § 523(a)(6) because the Superior Court Order included a finding that "[the] scheme allowed the Defendants

---

**5.** Lewis asserts that Lowery's Schedule B identified Lowery as 100% owner of Lowery & Associates, Inc. and identified the current value of the foregoing as $0.00.

**6.** The Court does not determine if the Debtor owed a fiduciary duty to Lewis at any time. *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 94 (Del.2007) (concluding that creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty, but may only assert derivative claims).

to obtain $2,066,719 in draws from the Plaintiff's loan account without alerting the Plaintiff that draws were not supported by work or materials actually installed in the residence." Section 523(a)(6) excepts from discharge "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

 The Superior Court Order included a finding of conversion against Lowery. Under Georgia law, "the exercise of dominion and control over property in violation of a court order or judgment constitutes conversion." *Parris Properties, LLC v. Nichols*, 305 Ga.App. 734, 745, 700 S.E.2d 848 (Ga.Ct.App.2010). The Superior Court finding establishes that Lowery caused injury to Lewis and Lewis' property. Lewis has, therefore, satisfied the injury element of section (a)(6).

 In *Kawaauhau v. Geiger*, the Supreme Court held that nondischargeability under § 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). Not every act of conversion will be sufficient to establish willful and malicious injury under § 523(a)(6). *In re Lemmons*, 2005 WL 6487216 (citing *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52 (11th Cir.1995); *Rentrak Corp. v. Neal (In re Neal)*, 300 B.R. 86 (Bankr.M.D.Ga.2003). To establish a willful injury, the plaintiff must show that the debtor defendant had a subjective motive to inflict injury or believed his conduct was substantially certain to cause injury. *In re Lemmons*, 2005 WL 6487216 (citing Restatement (Second) of Torts § 8A); *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001); *Bank of Lumber City v. Rowland (In re Rowland)*, 316 B.R. 759, 763–64 (Bankr.S.D.Ga.2004)).

While it is clear the Superior Court Order establishes that Lowery injured Lewis and his property and damages for the injury were $1,074,694.00, there is no indication in the record before the Court that the Superior Court actually considered and determined Lowery's subjective intent to cause injury or the probability of injury. *See In re Lemmons*, 2005 WL 6487216 (Bankr.N.D.Ga.2005) (declining to find identity of issues pursuant to § 523(a)(6) based on the lack of any indication in the record before the bankruptcy court that the jury in the superior court was instructed to consider debtor's subjective intent to cause injury or the probability of injury). Therefore, the Court grants summary judgment as to the injury element of § 523(a)(6) based on the underlying finding of conversion by the Superior Court and the damages caused thereby of $1,074,694, but the Court declines to grant summary judgment as to the willful and malicious element of § 523(a)(6).

### CONCLUSION

In summary, it is **ORDERED** that Lewis' Motion for Summary Judgment is hereby **GRANTED** as to the following issues:

(a) under § 523(a)(2)(A), Lowery intentionally misrepresented that weekly or monthly reports would be sent to Lewis, thereby inducing Lewis into the Contract, for which $250,000 in punitive damages is nondischargeable;

(b) under § 523(a)(4), Lowery fraudulently induced Lewis into signing the Contract by misrepresenting that weekly or monthly reports would be sent; and

(c) under § 523(a)(6), Lewis' claim of $1,074,694 was a result of injury by Lowery to Lewis and Lewis' property.

The issues not established on summary judgment include:

(a) under § 523(a)(2)(A), the actual damages resulting from Lowery's fraud;

(b) under § 523(a)(4), whether Lowery acted in a fiduciary capacity as to Lewis at the time the Contract was signed; and

(c) under § 523(a)(6), whether Lowery willfully and malicious intended to cause Lewis injury.

Nothing herein shall prohibit either party from litigating issues not decided herein.

**IT IS SO ORDERED.**